Green v. Hill.

### GREEN v. HILL.

Where the plaintiff sued out an original attachment, but did not pray for nor sue out citation for personal service upon the defendant, the court having quashed the attachment on motion, the defendant, who had come in without service and filed an answer to the petition, moved the court to dismiss the suit: *Held*, That had the defendant, not filed his answer, the motion should have been sustained; but as it·was, the motion was properly refused.

An original attachment, sued out without citation to the defendant, is a proceeding *in rem;* but if the defendant come in and take issue upon the petition, the action becomes personal. (Note 100.)

If a jury believed himself to be in possession of a knowledge of facts calculated to influence his verdict, he should make it known to the court; otherwise he violates his duty if he suffers his personal knowledge to affect his verdict.

Jurors cannot be too often reminded that they must look to the judge for the law and to the evidence for the facts.

Where the court told the jury: "I am not familiar with the custom of merchants in settling with insurance offices, or what are the liabilities of insurers, in cases of partial loss. I see on the jury planters and merchants who doubtless are familiar with transactions of this kind. You will apply the rules of the same to the nature of this kind of transaction:" *Held*, The charge was erroneous. So far as the transaction was governed by law, it belonged to the judge to declare the law; and so far as it rested on particular custom, the custom was a fact to be given in evidence to the jury, and not to be left to their personal knowledge

The rule is well established that this court will not reverse a judgment, on the ground that the verdict was contrary to the evidence, where the testimony is contradictory; but where there is no contradiction in the testimony, and no evidence to impeach the witness, the judgment will be reversed if the verdict be contrary to the evidence. (Note 101.)

Appeal from Harrison.

*Duval* and *Everett*, for appellant.

LIPSCOMB, J. This suit was brought by an original attachment sued out by the appellee against the appellant. The attachment was levied on a wagon and three horses. There [466] was no citation or personal service on the defendant. At the return term the defendant, by his counsel, filed a motion to quash the attachment, and assigned various grounds in support of the motion. At the same term he answered the petition, first, by a general denial of all and singular the matters and things in the petition contained, and, secondly, set-off and reconvention.

After these answers, the motion to quash coming on to be heard, the attachment was quashed. The defendant then moved to dismiss the cause; which was overruled. The overruling the motion to dismiss the suit after the attachment was quashed is the first error assigned, and we had as well dispose of it before progressing further. There being no personal service, but suit on attachment only, it was, in its commencement, a proceeding *in rem*, and so continued, until the defendant answered to the petition. The action on the petition then became a personal action. Had not the defendant answered to the petition before the judgment of the court on his motion to quash the attachment was entered, the mere fact of quashing the attachment would have dismissed the suit; because the suit was so far against the property by attachment. That being quashed, there was nothing remaining of the case in court, as the plaintiff had not sued out or prayed citation for personal service. The defendant had, by taking issue on the petition, in the meantime made it a· personal action. There was no error, then, in overruling the motion to dismiss the suit. The parties then proceeded to trial, and there was a verdict and judgment for the plaintiff. A motion for a new trial was made by the defendant, which being overruled, the defendant appealed.

On the trial a bill of exceptions was taken to the charge of the judge, and signed by him and made a part of the record in the case. The portion of the charge believed by the appellant's counsel to be erroneous is this: The judge, in giving his charge to the jury, said: "I am not familiar with the custom of

merchants in settling with insurance offices, [**467**] or what are the liabilities of insurers in case of partial loss. I see on the jury planters and merchants who doubtless are familiar with transactions of this kind. You will apply the rules of the same to the nature of this kind of transaction." This charge is certainly objectionable in this : that so far as the transaction was governed by law, it belonged to the judge to declare that law ; and so far as the question rested on particular custom, that custom was a fact to be given in evidence to the jury, and not dependent on the knowledge any particular jury might have of such custom. If this were permitted, each juror might assume to know of his personal knowledge what the custom was, and no two of them agree. If it was supposed that such knowledge was possessed by any one or more of the jurors, it was perfectly competent to make witnesses of such jurors. They would then be in the hands of each party to ascertain the means of acquiring a knowledge of such fact on the part of the juror. The oath of a juror will not permit him to find a verdict on what he may think he knows of himself, because then he would be passing on evidence known to himself and not to his fellow-jurors. If a juror believes himself in possession of a knowledge of facts calculated to influence his verdict, he should make it known to the court ; and if sworn to give his evidence, his fellow-jurors will then have it before them, not as what the juror would tell them in the jury-room, but what he had sworn to on the witness-stand. This way of allowing jurors to rely on their own supposed knowledge of facts or the knowledge of any number of them, without being given in evidence, is believed more frequently to occur than it ought. There is danger of its growing into precedent. It is especially wrong in principle, and exceedingly pernicious in its tendency, as affording a pretense for disregarding the evidence and relying on their own supposed personal knowledge of the fact, discolored by passion and prejudice, and warped by every variety of personal feeling. Jurors cannot be too often reminded that they must look to the judge for the law and to the evidence for [**468**] the facts of a case. The distinguished judge who gave this charge did not intend to be understood in the sense that might be applied to the language used. He could not have meant anything more than that, from the intelligence and practical good sense of the jury, they would be able the better to comprehend and apply the evidence, and not to give information to their fellow-jurors that could only have been given in the presence of the judge, under the oath of a witness. If, however, he intended that the jury should be governed by their own personal knowledge of either law or the facts, he erred in so doing ; and as the statement of the evidence sent up shows that it was not a mere speculative opinion of the judge on an abstract question, we cannot say but it had an influence on the jury. As it seems to be calculated to have had that tendency, it would afford grounds for reversal.

The next question is, did the court err in overruling the motion for a new trial? It will be hardly necessary to premise that it has been an established rule in this court that, where there was a conflict of evidence, and the jury must from necessity give credit to one witness and withhold it from another, a case was presented thereby so peculiarly within their province to decide that we would not reverse a judgment because that a motion for a new trial had been overruled. The statement of facts shows that there was a contest about the proceeds of thirteen bales of cotton shipped by the plaintiff for the defendant. In relation to this cotton, a witness introduced by the plaintiff testified "that there was something said about the cotton ; plaintiff said he had given him credit for it." The defendant introduced a witness, who testified that the plaintiff received the thirteen bales mentioned in the defendant's answer ; that plaintiff was to ship the said cotton to New Orleans and account for the proceeds ; the cotton was shipped and sunk in Lake Caddo ; the plaintiff stated to the defendant that the cotton was insured at $30 per bale ; plaintiff stated to defendant that he had been to New Orleans, and had fixed down the insurance at $30 per [**469**] bale, and that the insurance office had taken sixty days

to pay the money. In the account rendered the plaintiff had given credit for less than $20 per bale. There is no contradiction here in the testimony. It is all on one side, as to the cotton being arranged with the insurance office at $30 a bale. There was no evidence to impeach the credibility of the defendant's witness; and it is not perceived how the jury could have disregarded the evidence, unless, under the instructions given, they found the verdict on the personal knowledge of their own body. In this it seems the verdict was decidedly contrary to the evidence, on which ground the defendant ought to have had a new trial.

NOTE 100.—Campbell v. Wilson, 6 T., 379.
NOTE 101.—Weisinger v. Chisholm, 28 T., 780; Ector v. Wiggins, 30 T., 55.

