### WILLIAM CAMERON & CO., Inc., v. TRUEHEART.

(Court of Civil Appeals of Texas. Austin. Jan. 21, 1914. Rehearing Denied March 11, 1914.)

·1. MECHANICS' LIENS (§ 128*)—PROCEEDINGS TO PERFECT—NECESSITY OF FILING STATEMENT.

Const. art. 16, § 37, providing that materialmen shall have a lien upon the improvement for materials furnished, fixes the lien of the materialman where the materials are furnished under contract with the owner of the premises, and, in order to enforce the lien against the owner, it is not necessary to file an account with the county clerk, as required by Rev. St. 1911, art. 5621.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 177; Dec. Dig. § 128.*]

2. MECHANICS' LIENS (§ 61*)—RIGHT TO LIEN —NECESSITY OF CONTRACT WITH OWNER.

Under Rev. St. 1911, art. 5621, providing that a materialman who furnishes materials under a contract with the owner, or certain representatives of the owner, shall have a lien upon the improvement, a contract with the owner is essential to fix the lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 77, 78; Dec. Dig. § 61.*]

3. MECHANICS' LIENS (§ 59*)—RIGHT TO LIEN —CONTRACT WITH OWNER—PURCHASER UNDER EXECUTORY CONTRACT—"OWNER."

Under Rev. St. 1911, art. 5621, providing that a materialman who furnishes materials under a contract with the owner shall have a lien upon the improvement, a purchaser of the land under a verbal executory contract, which was subsequently carried out by the giving of a deed, was the owner within the statute.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 75, 76; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

4. MECHANICS' LIENS (§ 199*)—OPERATIONS AND EFFECT—PRIORITY—VENDORS' LIENS.

As between a vendor's lien upon the land and the lien of a materialman who subsequently furnished lumber for improvements, under a contract with a purchaser of the land under an ex-

ecutory agreement, the equities were all with the materialman as respects the improvements.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 371–374; Dec. Dig. § 199.*]

5. MECHANICS' LIENS (§ 198*) — OPERATION AND EFFECT—PRIORITY—LIENS IN GENERAL.

Under the express terms of Rev. St. 1911, art. 5621, a materialman's lien attaches to the improvements in preference to any prior lien upon the land.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. § 198.*]

6. MECHANICS' LIENS (§ 298*)—ENFORCEMENT —REMOVAL OF IMPROVEMENTS.

Under the direct provisions of Rev. St. 1911, art. 5629, the purchaser of the improvements on land at a foreclosure sale to satisfy a mechanics' lien may remove such· improvements within a reasonable time.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 622, 623; Dec. Dig. § 298.*]

7. MECHANICS' LIENS (§ 5*)—CONSTRUCTION OF STATUTES.

Rev. St. 1911, arts. 5621, 5622, giving a mechanic's lien upon the improvements the precedence over prior liens on the land, and authorizing the removal of such improvements, are in derogation of the common law, but, being intended to secure mechanics and materialmen in their pay, and under the express terms of Rev. St. 1879, p. 718, Gen. Prov. § 3, should be liberally construed to effect the purpose.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 3, 5; Dec. Dig. § 5.*]

8. MECHANICS' LIENS (§ 59*)—RIGHT TO LIEN —CONTRACT WITH OWNER—PURCHASER UNDER EXECUTORY CONTRACT.

·A purchaser of land under an executory contract, who subsequently fails to comply with his contract and receive a deed, is not the "owner" within Rev. St. 1911, art. 5621, giving a lien for materials furnished under contract with the owner of the land.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 75, 76; Dec. Dig. § 59.*]

9. MECHANICS' LIENS (§ 59*)—RIGHT TO LIEN —CONTRACT WITH OWNER—OWNERSHIP OF LAND.

Even though a deed by a corporation did not take effect as a conveyance because its corporate seal was not attached, it was evidence of a contract to convey which could be specifically enforced, and the grantee, who, under a previous verbal contract to convey, had erected improvements, was the "owner" within Rev. St. 1911, art. 5621, giving a mechanic's lien for materials furnished under contract with the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 75, 76; Dec. Dig. § 59.*]

10. CORPORATIONS (§ 455*)—CORPORATE POWERS AND LIABILITIES—USE OF SEAL ON CONTRACTS AND CONVEYANCES.

Rev. St. 1911, art. 7092, abolishing the use of seals on any contract, bond, or conveyance, except such as are made by corporations, does not make all contracts by corporations void unless under seal, but merely leaves the law as it was before, under which a seal was required to a deed of land by a corporation, but not to a contract to convey land.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1801–1803; Dec. Dig. § 455.*]

11. DEEDS (§ 77*)—RIGHT TO CONTEST VALIDITY.

In a suit to adjust the equities, the holder of a prior vendor's lien could not question the sufficiency of a deed by a corporation to the person who erected the improvements upon

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

-which a mechanic's lien was claimed, because its corporate seal was not attached, where the corporation was not objecting to the mechanic's lien nor seeking to repudiate its deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 209; Dec. Dig. § 77.*]

**12. MECHANICS' LIENS (§ 57*) — RIGHT TO LIEN—"CONTRACT WITH OWNER"—OWNERSHIP OF LAND.**

Where a deed to a corporation was made before its charter was issued, the title vested in the incorporators, and as each tenant in common is the owner except as to his co-owners, a contract with one, to which no objection was made, was a "contract with the owner" within Rev. St. 1911, art. 5621, giving a mechanic's lien for materials furnished under contract with the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 64–71, 74; Dec. Dig. § 57.*]

**13. DEEDS (§ 13*)—REQUISITES AND VALIDITY—PARTIES.**

A deed will not pass title to a grantee not in existence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 21, 22; Dec. Dig. § 13.*]

**14. CORPORATIONS (§ 30*) — INCORPORATION AND ORGANIZATION—CONTRACTS WITH CORPORATORS.**

The subscribers for the stock of a corporation constituted a voluntary association prior to the issuance of its charter, and a deed to the corporation vested title in them individually, though they held in trust for the corporation, and might be compelled to convey to it, or be estopped to deny its title by permitting it to deal with the land as its own.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

**15. TENANCY IN COMMON (§ 11*) — MUTUAL RIGHTS AND LIABILITIES — TITLE AND RIGHTS IN GENERAL.**

A tenant in common is the owner of the land as against every one except his co-owners.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 23, 28; Dec. Dig. § 11.*]

Appeal from District Court, Runnels County; John W. Goodwin, Judge.

Suit by H. M. Trueheart against William Cameron & Co., Incorporated, and others. From a judgment for plaintiff, the defendant named appeals. Reversed and rendered.

Stone & Wade, of Ballinger, for appellant. C. T. Dalton, of San Angelo, and H. P. Young, of Paint Rock, for appellee.

### Findings of Fact.

JENKINS, J. (1) On November 25, 1908, the land described in appellee's petition, situated in Concho county, Tex., was sold in part consideration of the notes sued on; a vendor's lien being retained to secure said notes.

(2) On January 20, 1909, appellee became, and still is, the owner of said notes, and they are due and unpaid.

(3) On or before May 6, 1910, several parties, among whom was R. A. Terry, agreed to organize a corporation, to be known as the "South Heights Land & Loan Company." Said parties subscribed for the stock of said corporation, as required by law, and on said date in due form applied for a charter for said corporation.

(4) A charter for said corporation was issued May 11, 1910.

(5) On May 7, 1910, a deed was executed to the South Heights Land & Loan Company for an undivided one-half interest in a certain tract of land by the owner thereof, the same being a part of the land referred to in the first finding of fact herein, and including lots 3, 4, and 5 in block 66 of the South Heights addition to the town of Paint Rock, in Concho county. Subsequent to May 11, 1910, said corporation purchased the other half interest in said land.

(6) From May 6, to August 12, 1910, appellant, who was engaged in the retail lumber business, sold to R. A. Terry lumber of the value alleged by it, consisting of the items shown in its answer herein, for the purpose of erecting buildings and fences on said lots, and the same was so used.

(7) At the time said lumber was so purchased and used, Terry had a verbal contract with the said land company for the purchase of said lots, and was in possession of the same. Said contract was carried out as follows: By agreement of parties J. T. Dawson, the president of said land company, on September 10, 1910, executed a deed in the name of said company to W. A. Norman for said lots, and on December 20, 1910, Norman executed a deed to said lots to Terry. The deed from said land company has no corporate seal, and it was not shown to have been executed by authority of the board of directors.

(8) Appellant never filed its account for the lumber sold to Terry with the clerk of Concho county until January 11, 1912.

(9) On February 15, 1912, appellant filed suit in the district court of Runnels county against Terry for price of the lumber so sold to him, and to enforce its materialman's lien on the improvements so erected on said lots, and March 12, 1912, recovered judgment in said suit against Terry for $803.30, with foreclosure of its lien on the said improvements, and on April 29, 1912, said improvements were sold by virtue of an order of sale issued on said judgment, and appellant became the purchaser of said improvements at said sale and received a deed therefor.

Upon these undisputed facts the court held that Terry was not the owner of said lots at the time he purchased the lumber from appellant, nor at the time he erected the improvements thereon, and never at any time became such owner, and therefore appellant acquired no lien on said improvements.

### Opinion.

The only issue in this case is as to whether or not appellant, by reason of the facts above stated, acquired a lien on the houses and fences erected on said lots superior to

the vendor's lien of appellee. The proper determination of this issue depends upon whether or not Terry was the owner of the lots within the meaning of the statute (R. S. art. 5621) at the time he made the contract with appellant for the purchase of the lumber used in the erection of the improvements on said lots.

[1] 1. Where the work is done or material furnished under contract with the owner of the premises, the Constitution fixes the lien (article 16, § 37), and in such case it is not necessary, in order to enforce the lien against the owner, to file the account provided for in the statute (R. S. art. 5622). Bank v. Taylor, 91 Tex. 78, 40 S. W. 879, 880; Strange v. Pray, 89 Tex. 525, 35 S. W. 1054; Loan & Investment Co. v. Cash, 87 S. W. 749; Building Co. v. Construction Co., 150 S. W. 770. Therefore, if Terry was the owner of the lots, it is immaterial that appellant did not file its account with the clerk of Concho county.

[2] 2. In order to fix the lien, there must be a contract with the owner of the land. R. S. art. 5621; Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37; Nicholstone Co. v. Smalley, 21 Tex. Civ. App. 210, 51 S. W. 527.

[3] 3. But the issue still remains, Was Terry the owner of the lots within the meaning of the statute? In Schutze v. Alamo Co., 2 Tex. Civ. App. 236, 21 S. W. 162, this court, speaking through Mr. Justice Key, now Chief Justice of this court, said: "It is true, perhaps, that a strict interpretation of the statute will limit its benefits to those who furnish labor, or material, under a contract with the owner, or with his agent, trustee, or contractor, made while he is such owner; but in view of the broad language of the Constitution, and our statutory provision which declares that the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes, and that the provisions thereof shall be liberally construed, with a view to perfect their objects and to promote justice (Rev. Stat. p. 718, Gen. Prov. § 3), we do not think this interpretation ought to prevail in this case."

[4-6] In the instant case the equities are all on the side of appellant. Appellee, in purchasing the notes acquired a vendor's lien on the land in its then condition. Appellant is not resisting the enforcement of this lien, and is not asking any relief that would depreciate the value of the land as it was at the time appellee purchased the notes. If it is permitted to move off the improvements that Terry made with appellant's lumber, appellee will still have all that he paid for, and all that he had any reason to expect when he bought the notes, he knowing at that time, as a matter of law, that if the owner or any subsequent purchaser placed improvements on the land and failed to pay for the same, they could be sold and moved off, by the enforcement of the statute in reference to liens for labor performed or material furnished for such improvements. The statute expressly provides that such liens shall attach to such improvements "in preference to any prior lien upon the land" (R. S. art. 5621), and that they may be removed. (R. S. art. 5629). Owens v. Heidbreder, 44 S. W. 1087.

[7] This is a remedial statute in derogation of the general rule of the common law that a house erected upon land becomes a part thereof. Bldg. Ass'n v. Clark, 33 S. W. 881; Crooker v. Grant, 5 Tex. Civ. App. 182, 24 S. W. 690. It is intended to secure mechanics and materialmen in their pay, and ought to be liberally construed to effect its purpose. That the courts of this state have given a liberal construction to this statute appears from decisions to which reference is hereinafter made.

[8] 4. The proposition that article 5621 should be construed to refer to the owner in the strict sense of that word is not supported by the decisions in Faber v. Muir, 27 Tex. Civ. App. 27, 64 S. W. 940, Association v. Perkins, 80 Tex. 62, 67, 15 S. W. 633, and Smith v. Huckaby, 4 Tex. Civ. App. 80, 23 S. W. 397. Those decisons are to the effect that a party in possession of land, under an executory contract to purchase the same, but who does not comply with his contract, fails to pay the purchase money, and in consequence thereof never receives a conveyance of the land, is not the owner of same, and therefore cannot incumber it with a mechanic's or materialman's lien. Such we understand to be the law. But in the instant case Terry did not breach his contract with the land company. On the contrary, he fully complied with the same, and received through Norman what was intended by said company to be a deed to the lots which he had contracted to purchase.

5. We refer to the following cases illustrative of how the courts have construed this statute: A party in possession of land under a verbal contract, specific performance of which could be enforced, is the sole owner of the land. Queen Ins. Co. v. May, 35 S. W. 831. Where a mortgagee permits the insurance on a burned building to be used in erecting another building on the land, the materialman's lien is superior to the mortgage lien. Building Association v. Clark, supra. Where the party for whom the work was done was not the owner at the time he contracted for same, he is the owner, within the meaning of the statute, if he afterwards becomes such owner. Schultze v. Brewing Co., 2 Tex. Civ. App. 236, 21 S. W. 163. To the same effect is the decision of the Supreme Court of Kentucky under a similar statute. See Creamery v. Mfg. Co., 45 S. W. 896.

[9, 10] 6. It is contended on the part of appellee that Terry never at any time became the owner of the lots, for the reason that the alleged deed from the land company to Norman, under which Terry claimed the lots,

was not executed under the seal of the land company, and therefore never took effect as a conveyance of said lots. Shropshire v. Behrens, 77 Tex. 275, 13 S. W. 1043. But, though this be true, it was evidence of a contract to convey which under the facts of this case could have been specifically enforced. Miller v. Alexander, 8 Tex. 43. It is true that our statute abolished the use of seals as to "any contract, bond or conveyance" (R. S. art. 7092), except "such as are made by corporations." But this does not mean that all contracts made by corporations not under seal are void; if so, a bill of lading issued by a railroad company would be void. It means that the use of seals, where they were therefore required, was abolished, except as to corporations. A seal was theretofore required to a deed to land (English v. Helms, 4 Tex. 233), but not to a contract to convey land (Miller v. Alexander, supra; Holman v. Criswell, 13 Tex. 45; Martin v. Weyman, 26 Tex. 467).

[11] 7. Aside from what has been said in the preceding paragraph, we do not think that appellee should be heard to question the sufficiency of the deed from the land company on the technical ground that it did not have the impress of the corporation's seal. This was not a suit of trespass to try title, wherein the plaintiff is required to recover upon the strength of his own title, but a suit to adjust the equities between the parties. Had the land company placed the improvements upon the land under the same circumstances that Terry placed them there, it is certain that appellant could enforce its lien against appellee. The land company is not objecting to the enforcement of appellant's lien, nor seeking to repudiate its deed; why should appellee be permitted to do so? If appellant's lien impaired the value of the lien that was purchased by appellee, there would be some reason for his objection, but it does not do so.

[12-15] 8. For another reason we think it should be held that Terry was the owner of the land. The conveyance of a one-half undivided interest to the South Heights Land Company was made before the charter to that company was issued. A deed will not pass title to a grantee not in existence. Prior to the issuance of the charter those who had subscribed for the stock of the corporation were a voluntary association, and the deed vested title to them individually. It is true in such case they would hold as trustees for the corporation subsequently formed, and might be compelled to convey the land to the corporation, or they might be estopped to deny the title of the corporation if they stood by and saw it deal with the land as its own, but, nevertheless, the deed in this case conveyed the legal title to those who afterwards became stockholders in the corporation, and not to the corporation itself. Terry was one of these parties. A tenant in common is the owner of the land as against every one except his co-owners.

We hold under the facts of this case that Terry was the owner of the lots within the meaning of the statute with reference to the materialman's lien, for which reason appellant acquired a lien on the improvements superior to appellee's lien; that by the purchase of said improvements under its judgment against Terry foreclosing said lien, appellant became the owner of said improvements and is entitled to the possession of same, and to a reasonable time in which to remove them from said lots. For which reason the judgment of the trial court is reversed and here rendered for appellant in accordance with this opinion.

Reversed and rendered.