## MORRISON et al. v. STATE TRUST CO.
### (No. 2511.)

(Court of Civil Appeals of Texas. Amarillo. June 10, 1925. Rehearing Denied July 1, 1925.)

1. **Mechanics' liens** &#8258;1—**Did not exist either at common law or in equity.**

 Mechanics' liens did not exist either at common law or in equity, but had their origin and operation by virtue of Constitution and statutes relating thereto.

2. **Mechanics' liens** &#8258;55(1)—**Must be based on contract to pay for labor or material, and trespasser not entitled to lien.**

 As basis for mechanic's lien, there must be either express or implied contract to pay for labor or material, and trespasser placing improvements on property of another, without express or implied agreement with owner to pay for them, is not entitled to mechanic's lien.

3. **Mechanics' liens** &#8258;199—**Whether improvement separate and entire not controlling as to priority.**

 As regards question of priority between vendor's liens and subsequent mechanic's liens, there is no distinction between rights of materialman building a separate and distinct improvement, and one whose work and material does not constitute a separate betterment.

4. **Mechanics' liens** &#8258;5—**Statute creating mechanic's lien strictly construed against lienor, but enforcement provision thereof liberally construed.**

 A statute creating a mechanic's lien is in derogation of the common law, and must be strictly construed against lienor, but portion providing method of enforcing lien must be liberally construed, in order to carry out its purpose of efficient enforcement.

5. **Mechanics' liens** &#8258;199—**When improvement cannot be separated without damaging freehold, property sold and proceeds prorated between vendor's lien and mechanic's lien.**

 In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1011, 5621–5628, and Vernon's Ann. Civ. St. Supp. 1918, art. 5631, held that, under Const. art. 16, § 37, as between vendor's lien and subsequent mechanic's lien for improvement of permanent character, incapable of being separated from homestead without destroying improvement and damaging freehold, entire property should be sold as a whole, and proceeds prorated.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by the State Trust Company against William G. Morrison and others, tried on an agreed statement of facts. From the judgment, defendants appeal. Reversed and rendered.

E. M. Mann, of Wichita Falls, for appellants.

Dabney, Goggans & Ritchie, of Dallas, amicus curiæ.

Davenport, Thornton & Crain, of Wichita Falls, for appellee.

HALL, C. J. This case is before us upon purely a question of law. The briefs present the question of the priority of liens; the contest being between the holder of a vendor's lien and those holding a subsequently acquired mechanic's lien. The appellee, trust company, as the transferee before their maturity of two vendor's lien notes dated February 26, 1920, executed by Walter Salm alone, in the sum of $2,750 each, instituted this suit to recover the amount due upon the notes and to foreclose the vendor's lien. Walter Salm and wife, Wm. G. Morrison, and J. P. Coleman were made parties defendant. On the 10th day of March, 1923, Salm and wife executed to Morrison and Coleman a mechanic's lien contract upon the lot in question to secure the payment of $416.34; the same being the cost of certain street improvements to be constructed and laid by Morrison and Coleman in front of and adjacent to the property in suit. It is agreed that both liens are regular and formal, and that the mechanic's lien was properly executed, acknowledged, and filed for record under an ordinance of the city of Wichita Falls, duly enacted; that the work was done in accordance with the contract; that the value of the house and lot in question just prior to the construction of the street improvement was $4,600; that its value, after the paving had been completed, including the improvement, was $5,016.34, and that the work of paving had enhanced the value of the property to the extent of $416.34. It was further agreed that the paving could not be removed from said property without destroying it; that said improvement was of a permanent character, complete within itself, and was inseparable from the property and incapable of division and separation from it without greatly impairing and damaging the improvement of the street and the balance of the property.

---

The case was tried by the court without a jury upon an agreed statement of facts.· The court rendered judgment in favor of the appellee, trust company, for the full amount of its notes, principal, interest, and attorney's fees, and foreclosing the vendor's lien upon the property, holding that said lien was prior to the mechanic's lien. It was also decreed that Morrison and Coleman have judgment for the amount sued for with a foreclosure of their mechanic's lien upon the property, but expressly decreeing that said foreclosure should be in all things subject to and inferior to the foreclosure of the vendor's lien in favor of plaintiff. No personal judgment was rendered against Salm in favor of Morrison and Coleman. It was ordered that the property be sold, that the judgment in favor of appellee company should be first satisfied in full from the proceeds of the sale, and that any excess should be applied to the satisfaction of the claim of Morrison and Coleman. No question is made upon the sufficiency of the pleadings; the sole issue being as to the superiority and priority of the liens.

According to the agreed statement of facts, the property is worth about $1,400 less than the total indebtedness secured by the two liens.

V. S. C. S. (1918 Supp.) art. 5631, prescribes the formal requisites to the fixing of a valid lien upon a homestead. V. S. C. S. (1914) arts. 5621–5627, relate to the fixing of the lien upon property which is not exempt. Article 5628 of the same chapter provides:

"The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished, or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad, have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be 'affected thereby, and holders of such liens need not be made parties in· suits to foreclose liens herein provided for."

The proposition of appellants Morrison and Coleman, who constructed the pavement under a formal written contract with Salm and wife, is that the trial court erred in holding that the vendor's lien held by the appellee, trust company, was a prior and superior lien upon the house and lot, and in decreeing that the house and lot be sold and the proceeds applied first to the satisfaction of the vendor's lien debt, and the excess, if any, to the payment of appellants' claim for paving. The agreed statement of facts shows that Salm and wife bought the house and lot in question, and that the purchase extended "to the center of Tenth street," upon which street the pavement was laid. We then have a case where the owners of a homestead have duly contracted for the construction of a separate and entire improvement thereon; said improvement being of a permanent character and incapable of being separated therefrom without destroying the improvement itself and damaging the freehold. It is agreed that the value of the house and lot, aside from the pavement, is $4,600; that the value of the pavement is $416.34, and that the aggregate value of the whole property is $5,016.34. The effect of this agreement is that the value of the homestead has been enhanced by the pavement to the extent of $416.34.

Appellants insist that the court should have decreed that the property be sold, and,· if the proceeds were not sufficient to pay both claims in full, then that it be prorated, as was done in the case of Land Mortgage Bank of Tex. v. Quanah Hotel Co., 89 Tex. 332, 34 S. W. 730.

Creosoted Wood Block Paving Co. v. McKay (Tex. Civ. App.) 211 S. W. 822, 234 S.· W. 587 and 241 S. W. 549, was a contest between the holder of a vendor's lien and the owners of a subsequently acquired paving lien. The Dallas Court of Civil Appeals held that the vendor's lien was superior. Writ of error was denied. It does not appear. that by pleading and evidence there was any attempt made in that case to show the value of the lot and improvements separately, or to invoke the principle announced in the Quanah Hotel Case, and that case is not cited in either of the three opinions. In Quinn v. Dickinson (Tex. Civ. App.) 146 S. W. 993, this court gave priority to a vendor's lien over a mechanic's lien, acquired for papering, painting, and repairing the homestead, because such improvements could not be removed without damaging the 'freehold. The trial court had placed the mechanic's lien in the same class with the vendor's lien and prior mechanic's liens which had been contracted by the vendor of the owners while it was their homestead. A writ of error was denied in that case. Judge Graham based his decision upon Sullivan v.· Texas Briquette & Coal Co., 94 Tex.· 541, 63 S. W. 307, Citizens' National Bank of Waco v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86 (by the Court of Civil Appeals in which a writ of error was denied), and Watson v. Markham & Reese, 33 Tex. Civ. App. 476, 77 S. W. 660.

The case of Owens v. Heidbreder (Tex. Civ. App.) 44 S. W. 1079, follows the holding in the Quanah Hotel Case. Lyon-Gray Lumber Co. v. Nocona Cotton Oil Co. (Tex. Civ. App.) 194 S. W. 633, was a contest between mechanic's lienors and a prior mortgagee, and it was held that the mortgage was the superior lien. A writ of error was refused. In Wm. Cameron & Co. v. Trueheart (Tex.

Civ. App.) 165 S. W. 58, the court said that the equities were all with the mechanic's lienor as to the improvements, although there was a prior vendor's lien upon the land. In Phelps v. Edwards, 52 Tex. 371, Judge Bonner said:

"To hold, in such a case as this [that] the lien of one who furnishes machinery to another necessary to make available his property, should be subordinate to the lien for the unpaid purchase money for this property, would, we think, be in restraint of trade and against sound principles of equity."

[1, 2] But that case was decided under Paschal's D. art. 7112, which expressly extended the lien so as to cover the land upon which the improvement was placed. It is a significant fact that the Phelps Case has never been cited by any subsequent decision, and also the Quanah Hotel Case, wherein it applies equitable principles, has been cited only once, and that in the case of Kahler v. Carruthers, 18 Tex. Civ. App. 216, 45 S. W. 161, in which a writ of error was refused. The contest in the Kahler Case was between the holder of vendor's lien notes upon a homestead and mechanic's lien claimants who had erected a brick building upon the property. The court said that, whatever may be the law in other states, it is now well settled in Texas that in cases involving foreclosure of mechanic's lien upon the building where a prior lien for the purchase money existed upon the lot at the time the mechanic's lien was fixed, it was proper for the trial court to decree the sale of the lot and building together as a whole and prorate the proceeds. A mechanic's lien did not exist either at common law or in equity. It has its origin and operation in virtue of the Constitution and statutes relating to it. As a basis for the lien in Texas, there must be a contract, either express or implied, to pay for the labor or material. A trespasser who places improvements upon the property of another, in the absence of an express or implied agreement with the owner to pay for them, is not entitled to a mechanic's lien. Gaylord v. Loughridge, 50 Tex. 573; Lippencott v. York, 86 Tex. 276, 24 S. W. 275; Shields v. Morrow, 51 Tex. 393; Miner v. Moore & Owenby, 53 Tex. 224; Faber v. Muir, 27 Tex. Civ. App. 27, 64 S. W. 938; Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37; McCallen v. Mogul Producing & Refining Co. (Tex. Civ. App.) 257 S. W. 918.

In the Sullivan Case, supra, Judge Brown gave a mortgage lien priority over a subsequently acquired mechanic's lien for coal cars used in the mine, plumber's material, machinery, lumber, etc., which went into improvements already on the property. While equitable considerations were liberally applied by Judge Brown in the Quanah Hotel Case, he said, in the Sullivan Case, that "the rights of the parties in this case are fixed by the statute, and cannot be disposed of upon any supposed equitable grounds." In a subsequent appeal of this same case, reported as Vaughan Lumber Co. v. Martin, 98 Tex. 80, 81 S. W. 1, in again giving the mortgage bond holders priority, he said that the mechanic's lien claimants had introduced no evidence showing the value of the land and the improvements, and, "failing so to do, or to present in this court a record by which their equities, if they have any, can be ascertained, the judgment of the Court of Civil Appeals will not be reversed in order to give them an opportunity to make a case they combatted on the former trial by unqualifiedly claming priority to the entire fund." In the Strauss Case, supra, the trial court applied the principle announced in the Quanah Hotel Case, but the Court of Civil Appeals reversed the judgment, and gave to a mortgage which was prior in point of time precedence over a mechanic's lien for material and labor in putting a new roof on the mortgaged hotel, and based the decision upon the holding in the Sullivan Case. A writ of error was denied in the Strauss Case. The Watson Case, supra, is one where improvements were added to a gin, and a prior vendor's lien was there declared superior to the mechanic's lien, fixed afterward for the value of the improvements. While this case did not reach the Supreme Court, the decision is based upon the Strauss Case. In Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790, Judge Brown seems to have ignored all equitable considerations, and, applying the cold letter of the statute, gave mechanic's liens, which were fixed after an intervening mortgage was executed and filed, precedence and placed them upon the same footing with the original mechanic's lien which was perfected before the mortgage lien was executed. In the McCallen Case, supra, the superiority of a vendor's lien over a mortgage lien was clearly recognized when, under the facts, the rule in the Quanah Hotel Case could have been applied as to some of the mechanic's lien claimants.

This brief review of decisions, in which the question of the priority of mechanic's liens as against prior mortgage and vendor's liens illustrates the confused condition in which we find the law of Texas to be. Reference to the numerous cases cited in the Century and Decennial Digests shows that the weight of authority elsewhere is opposed to the doctrine announced in the Quanah Hotel Case, though some text-writers, citing well-considered cases, have applied the doctrine of the Quanah Hotel Case under statutes similar to our own. See Elliott & Barry Engineering Co. v. Baker, 134 Mo. App. 95, 114 S. W. 71; Haeussler v. Thomas, 4 Mo. App. 463; Getchell v. Allen, 34 Iowa, 559.

In 2 Jones on Liens (3d Ed.) p. 698, § 1462A, it is said:

"These statutes apply only when a building or improvement as an entirety is placed upon the mortgaged land. Where the improvement is a mere betterment, or where repairs are made upon a building or improvement upon which there is a valid lien and the owner has only a qualified right, it would be unjust and inequitable in many cases, and against the plain provision of article 3018 (Statute), to enforce the lien and give it priority on the entire building or improvement. It would appropriate one man's property to pay the debts of another without his knowledge and consent. A lien for labor done or materials furnished for the improvement or enlargement of a building does not take priority over an existing mortgage, even though the building be changed so that very little of the original structure remains."

The same author (page 696, art. 1462) says:

"In several states a prior mortgage retains its priority only upon the land; the mechanic's liens having priority upon the buildings or improvements erected upon the land. Provisions are made in the statutes of these states for enforcing the liens against the buildings by a sale and removal of the buildings or by a sale of land and buildings together, and a distribution of the proceeds between the mortgagee and the lienholders according to the respective value of the land and buildings. As against a prior mortgage or incumbrance on the land, the equity and policy of the statute which secures the mechanic's and materialman's lien rest upon the principle that no injustice is done in preventing the holder of the older lien from appropriating the labor and material of others by which his security is enhanced without compensation."

27 Cyc. p. 252, states the rule to be that, where a mechanic's lien accrues upon property subject to a prior vendor's lien, "such vendor's lien is of course entitled to priority," but on page 254 says that in some states the priority to which the mechanic's lien is entitled is accorded by an apportionment of the respective values of the improvement and of the land, and in distribution of the proceeds of the entire property in accordance with such apportionment, and where such a system prevails it would seem that the right of the mechanic's lien claimant to priority as to the proportionate value of the building or improvement is in no way dependent upon the latter being susceptible of removal from the land. 5 Thompson on Real Property, § 4271, announces the same rule, but admits there are exceptions to it which are not applicable here. The same author, in volume 6, §§ 5075, 5076, 5079, and 5082, discusses the question under consideration at great length, and in the last-mentioned section says:

"The vendor's lien for the purchase money of land is superior to any mechanic's lien for labor or material used in the construction or repair of the building thereon. A note given in renewal of a vendor's lien has the same priority. It does not matter in such case that the mortgage is given after a mechanic has expended work and materials upon the property. As regards priority, the lien of the mortgage relates back to the lien of the vendor. * * * Where a mechanic builds on the land of one who holds a bond for a debt, only the equitable interest of such purchaser is subject to the mechanic's lien, but in equity the mechanic may compel a sale of the land to pay, in the first place, the purchase money due the vendor under the bond, and afterwards the lien debt due the mechanic."

The discussion referred to in the foregoing sections by Thompson announces the same rules which we find in 18 R. C. L. (Mechanic's Liens) §§ 95, 96, 98, and 99.

So we find that there is an irreconcilable conflict, not only in the decisions of this state, but in other jurisdictions, upon the very question at issue before us, and the decisions generally turn upon the peculiar wording of the statute under which the cases arose. A review of many decisions in other jurisdictions leads us to the conclusion that, if the statute does not create the lien, the courts by an overwhelming majority will not extend it upon equitable principles so as to affect a prior mortgage or vendor's lien on the land as was done in the Quanah Hotel Case and in Maynard v. Columbus, 150 Ky. 817, 150 S. W. 1019. See Crowther v. Fidelity Insurance Trust, etc., Co., 85 F. 41, 29 C. C. A. 1, and the United States Supreme Court cases therein cited.

We find that in Illinois, Colorado, and several other states, where the courts have ordered the whole of the property sold and the proceeds prorated between the prior lien of the vendor or mortgagor and the mechanic lienor, it was done because the statutes of those states expressly authorized such procedure. The case of Bradley v. Simpson, 93 Ill. 93, is one of the two cases upon which Judge Brown bases his holding in the Quanah Hotel Case, and we find that it was so decided because of this special provision in the Illinois statute. The Texas statute does not contain any such provision; on the contrary, it would seem to exclude by inference such procedure (if indeed, it can be held that article 5628, which deals with the priority of liens, can have any application at all to the particular case before us), because it provides that the mechanic lienor need not make the prior lienor a party to his suit to foreclose, and of course, if this is not done, there could be no sale of the property ordered by the decree. The effect of that article as applied to this case is to give appellants a prior lien upon the pavement and the appellee a prior lien on the land, including that part of the lot which extends to the center of the street, and upon which appellants have laid their paving material. The only remedy which this

statute expressly gives the mechanic's lienor is to "have such house, building or improvement or any piece of the mortgaged property sold separately." In this case the pavement is a betterment, and not the repairing or adding to any improvement already upon the land. If the court had foreclosed appellants' lien on the pavement, decreeing that they could sell, buy, and remove the paving material from the lot, it would have been an empty victory because the cost of removing would probably be more than the value of the salvage, and their labor in putting it down in the first instance would be a total loss. The statute expressly preserves the integrity of the prior lien upon the land as it existed at the inception of the mechanic's lien, by saying that the former "shall not be affected" by the later lien. When appellants laid the pavement, it was done with notice of the vendor's lien, and, under the common law, the pavement, being a part of the realty, became subject to the vendor's lien. Appellants, being junior incumbrancers, had only the right to redeem the vendor's lien and to be subrogated to appellee's rights under it. This they could do only by paying appellee its debt in full. If we are correct in this, then to permit them to have the whole property sold and the proceeds prorated when, according to the agreed facts, appellee will realize considerably less than the amount of its debt, certainly "affects" his lien, which the statute expressly said should not be done; in other words, it seriously impairs the obligation of appellee's contract, and for that reason many cases in other jurisdictions have held such statutes to be unconstitutional to that extent.

[3] Appellants insist that this, like the Quanah Hotel Case, where the improvement is a betterment, complete and entire within itself, is to be distinguished for that reason from the Strauss, Sullivan, and that line of cases where the improvement consisted in repairing by painting, papering, or putting a new roof on an existing improvement. We confess our inability to see the reason for such a distinction, and it is clearly not deducible from the language of the statute. The argument that a materialman who builds a chicken house, coal bin, or digs a cistern or well equipped with pump, and windmill, upon a valuable city homestead, which is already incumbered, is entitled to have the homestead sold and the proceeds prorated, because his improvement is entire and separate, while another lienholder, who adds a story or puts a new roof on the same house, is to be postponed to the prior lien because his work and material do not constitute a separate betterment, does not strike us as being sound. No such distinction is recognized by the courts.

[4] However, as suggested by appellants, all the cases in Texas, where the rule in the Quanah Hotel Case was not applied, are suits where, by their pleadings and evidence, the mechanic's lienor did not insist upon its enforcement. The conflict between the two lines of cases cannot be reconciled, but the cases holding contrary to the Quanah Hotel Case may be accounted for upon that ground only. V. S. C. S., art. 1011, declares that a paving lien shall be superior to all other liens except state, county and municipal taxes. This is, of course, inapplicable to property exempt under the Constitution as a homestead, but tends to show the legislative intent to protect the mechanic lienor. A statute creating a mechanic's lien fixes an involuntary incumbrance, and is in derogation of the common law, and must therefore be strictly construed against the lienor. First National Bank v. Lyon-Gray Lumber Company (Tex. Civ. App.) 194 S. W. 1146, 217 S. W. 136. But that part of the statute which provides the method of enforcing the lien must be liberally construed, in order to carry out its purpose of efficient and speedy enforcement. Warner Elevator Mfg. Co. v. Maverick, 88 Tex. 489, 30 S. W. 437, 31 S. W. 353, 499; Cameron v. Trueheart (Tex. Civ. App.) 165 S. W. 58.

[5] Article 16, § 37, of the Constitution provides:

"Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the legislature shall provide by law for the speedy and efficient enforcement of said liens."

In construing this article of the Constitution in the Maverick Case, Judge Brown said:

"The Constitution imposed upon the Legislature the duty of providing by law for the 'speedy and efficient enforcement' of such liens. If no law had been passed upon this subject, the lien could be enforced under the general rules of equity governing the foreclosure of liens."

Although, as stated above, the statutes enacted by the Legislature do not apply exactly to the peculiar facts presented by this record, still the Constitution itself creates a lien in favor of appellants, who have by their pleading and evidence made it possible for the trial court to apply equitable rules in the enforcement of their lien, and we therefore follow the holding in the Quanah Hotel Case, and reverse the judgment of the trial court, and render it for appellants, with instructions that the property be sold and the proceeds prorated.

Reversed and rendered.