R. B. SPENCER & CO. v. BROWN et al.
(No. 714.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 8, 1917. Rehearing Denied
Dec. 6, 1917.)

1. MECHANICS' LIENS ☞13—SCHOOL BUILD-
ING—SEVERANCE FROM REALTY.

Under Rev. St. 1911, art. 2845, which pre-
cludes the fixing of a lien upon school property,
although a rock schoolhouse constituted a per-
manent fixture upon the land, and was a part
thereof, where the manifest intention of school
trustees, under written contract for completion
of addition to a school building, was to vest
title in the contractor, it would constitute a
severance, and for materials furnished the
contractor for reconstructing the rock school-
house plaintiff had the right to a lien, although
the contractor had sold his interest in the build-
ing prior to the time the materials were fur-
nished, where the sale did not become effective
until later.

2. SCHOOLS AND SCHOOL DISTRICTS ☞65 —
SALE OF PROPERTY—STATUTE.

Rev. St. 1911, art. 2846, requiring order of
commissioners' court for sale of school property,
relates to common school districts, and is inap-
plicable to independent school districts.

3. SCHOOLS AND SCHOOL DISTRICTS ☞74—
SALE OF PROPERTY — CONSENT OF STATE
BOARD OF EDUCATION—RATIFICATION.

In August a school district agreed in writ-
ing to give a contractor a certain amount of
cash, a stone building, etc., for completing an
addition to a school building. The work was
completed, but no consent of the State Board of
Education was procured for a sale of the stone
school building, as required by Rev. St. 1911,
art. 2873, until about two months later. Held,
that the resolution of consent of the Board of
Education, authorizing sale, operated retroac-
tively and made the contract with the contrac-
tor effective as of date of contract.

4. SCHOOLS AND SCHOOL DISTRICTS ☞74 —
SALE OF PROPERTY—AUTHORITY BY STATE
BOARD—CONSTRUCTION.

Under resolution of State Board of Educa-
tion giving school trustees power to sell part or
all of a 10-acre tract upon which was located
an old schoolhouse, trustees could sell school-
house alone.

5. SCHOOLS AND SCHOOL DISTRICTS ☞65 —
SALE OF SCHOOL PROPERTY—DEED—SUFFI-
CIENCY.

Rev. St. 1911, art. 2873, requiring deed from
school board to recite resolutions of trustees
and State Board of Education as to sale, is di-
rectory, and a failure to incorporate such reso-
lutions does not nullify conveyance.

Appeal from District Court, Erath County;
W. J. Oxford, Judge.

Action by R. B. Spencer & Co. against J. G.
Brown and another. Judgment against de-
fendant named for the amount of the account
sued for, but denying foreclosure of lien, and
plaintiffs appeal. Reversed and rendered.

Hickman & Bateman, of Stephenville, and
Lattimore, Bouldin & Lattimore, of Ft.
Worth, for appellants. Chandler & Pannill,
of Stephenville, for appellees.

HIGGINS, J. On August 8, 1914, the board
of trustees of the Lingleville independent
school district entered into a written contract
with J. G. Brown by the terms of which
Brown agreed to erect and complete an addi-
tion to the public school building as per plans
and specifications, the board agreeing to pay
Brown the sum of $717 in cash and two old
school buildings, being a rock building locat-
ed at Lingleville, and the building known as
the Antioch Building, together with three
acres of land upon which the Antioch Build-
ing is located. Brown was to have the privi-
lege of using, in the construction of the addi-
tion, all materials that were sound and in
good condition in the old buildings. The con-
tract is not skillfully drawn, but the legal ef-
fect thereof is as indicated. This contract
was performed by Brown. The board of
trustees of the Bosque Presbyterian Church,
being advised that Brown had acquired the
right to the rock building mentioned above,
made an oral agreement with the board of
trustees of the Lingleville school district,
whereby the latter agreed to convey to the
church two and one-half acres of land upon
which the rock building was situate, and the
board of trustees of the church also made an
agreement with Brown whereby Brown
agreed to fit up and complete the old rock
building as a church for the use of the
church. The board of trustees of the church
agreed to pay Brown $650 in money and con-
vey to him a lot in Lingleville. This con-
tract between Brown and the trustees of the
church was in writing, but was lost and was
not offered in evidence. The contents there-
of were testified to by the trustees and its
substance is as indicated. The two contracts
made by the trustees of the Presbyterian
Church were made in the month of August,
and in dealing with Brown they evidently re-
garded and treated with him as the owner of
the rock building. They made the agreement
with Brown upon the condition that the trus-
tees of the school district would sell to them
the land upon which the building was situat-
ed. At the time the church trustees con-
tracted with Brown, the rock building was in
a dismantled condition, the roof and all build-
ing material in the second story thereof hav-
ing been removed. The walls were then
about 10 feet high, and with these walls the
building was reconstructed by Brown as a
church, and delivered to the Presbyterian
Church and the trustees thereof. In the con-
struction of the church building, Brown pur-
chased his material from the appellants and
failed to pay for same. Appellants filed their
account for record, and gave the notice re-
quired by law, in order to fix a materialman's
lien upon the church building and the ground
upon which it was situate, such account be-
ing filed and notice given within the time
and in the manner required by law. The
trustees of the church conveyed to Brown the
lot which it had contracted to convey to him,
and also paid in cash or by note the other
consideration agreed upon by them for the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

construction of the church building. The material was furnished to Brown by appellants during the month of September. By deed dated October 31st, the board of trustees of the Lingleville independent school district conveyed to the trustees of the church, for a consideration of $125 cash, the 2½-acre tract of land upon which the above-mentioned rock building was situate. At the time the board of trustees of the Lingleville independent school district made the above-mentioned contracts with Brown and with the trustees of the church, no order had been made by the commissioners' court of that county prescribing the terms of sale of the rock building or of the land, nor had the consent of the State Board of Education been obtained to the sale of the house or the land. Some time in October, apparently about the 19th day thereof, or, in any event, prior to the date of the above-mentioned deed, the State Board of Education made an order which reads as follows:

"Resolved by the State Board of Education of Texas that permission is hereby granted to the board of school trustees of Lingleville independent school district to sell to the highest bidder, for the purpose of investing the proceeds in more convenient and desirable school property, the following described property:

"All or any part of a ten-acre tract of land, known as the old school ground, for the purpose of investing the proceeds in more desirable school property."

The above-mentioned 2½-acre tract of land upon which the old rock building was situate seems to be treated by the parties as being embraced within the 10-acre tract of land referred to in the foregoing resolution of the State Board of Education. The board of trustees of the church, in their dealing with Brown and with the board of trustees of the independent school district, seem to have treated and regarded Brown as the owner of the rock building, and the board of trustees of the independent school district as the owner of the land. In any event, the church trustees, in dealing with the school trustees, knew of Brown's right or claim to the rock building. In contracting with Brown, the church trustees did so upon condition that they could secure title from the school board to the 2½ acres of land, and having obtained an oral agreement from the school trustees to so convey the land, the contract with Brown for the repair and completion of the rock building was made and performed by Brown and the church trustees. This suit was filed by appellants to recover of Brown the purchase price of the material furnished and for foreclosure of a materialman's lien upon the building and ground against Brown and the church. Judgment was rendered in their favor against Brown for the amount of the account and foreclosure of the lien claim denied, and from this judgment this appeal is prosecuted. The date of the completion of the repairs upon the rock building by Brown is not definitely shown, but it was some time

in the month of September, about the 28th day thereof, when it was completed and turned over to the church.

## Opinion.

Upon the facts stated, we hold that Brown became the owner of the old rock house and the repairs thereto were made by him as such owner. Appellants having furnished the material to him used in repairing the house, they acquired a lien thereon under the Constitution and statutory laws of our state. It thus follows that appellants were entitled to a foreclosure of their lien upon the building and an order directing its sale. The purchaser at such sale will have the right to remove said building within a reasonable time from the date of the purchase under the provisions of article 5629, R. S.

[1] Appellees contend that the building was a permanent fixture upon the land and a part of the realty, and that title thereto remained in the board of trustees of the Lingleville independent school district until October 31st, upon which date title passed to the church by the conveyance above mentioned. It is asserted that since the title to the land and building was vested in the board of trustees of the Lingleville independent school district at the time the material was furnished for its repair, that, therefore, no lien could attach to the building under the provisions of article 2845, R. S., which precludes the fixing of a lien for material upon school property, and that when the church acquired the deed from the board of trustees they therefore acquired the same free from any lien.

It is true the rock building constituted a permanent fixture upon the land and was a part of the realty. But by contract of sale the owner may sever such a fixture from the realty without a physical detachment, making a constructive severance. 11 R. C. L. 1066; 19 Cyc. 1070; Johnston v. Mtg. Co., 129 Ala. 515, 30 South. 15, 87 Am. St. Rep. 75.

The manifest intent of the contract between the trustees of the school district and Brown was to vest title to the rock building in Brown, and this would constitute a constructive severance. Since this contract was in writing, it was not within the scope of the statute of frauds. But appellees further contend that Brown did not become the owner of the building under his contract with the school board, because no order had been made by the commissioners' court of the county prescribing the terms of the sale, as required by article 2846, R. S., nor had the consent of the State Board of Education to such sale been obtained, as required by article 2873, R. S.

[2] Article 2846 has no application, because the school district was an independent school district. Said article appears in the Revised Statutes in chapter 15, title 48. This chapter relates to common school districts. Originally this article was section 86 of chap-

ter 124, Acts of the Twenty-Ninth Legislature, p. 263. It there appears under the subtitle "School Houses and School Supplies" of the title "Common School Districts." It is thus manifest that this article relates to the sale of property belonging to common school districts.

[3] The sale of school property belonging to the Lingleville independent school district is, however, governed by the provisions of article 2873, R. S., which requires the consent of the State Board of Education. The State Board of Education did adopt a resolution, which was quoted above. This resolution did not in any wise undertake to prescribe the details of the sale which might be made of the land by the school board, and was sufficiently comprehensive to authorize the school board to make the sale thereof in the form of applying the value thereof to the construction of a new building. That is what was done by the agreement between the school trustees and Brown. This resolution of the State Board of Education constituted sufficient authority to the board of trustees to pass title to the school building to Brown, but in this connection it will be noted that this resolution was adopted subsequent to the date of the contract between the school board and Brown. Since said consent of the state board did not exist at the time of the contract with Brown, appellees contend he did not obtain the title to the building, and was therefore not the owner thereof, so as to enable him to fix a lien thereon for materials furnished. We do not think that a deed to a house or land executed by the board of trustees of an independent school district without the previously obtained consent of the State Board of Education would be such an absolute nullity as would preclude the application of the principles of ratification. Undoubtedly, however, it would be lacking in an essential necessary to its complete validity, viz. the consent of the State Board to the sale, but if such consent be subsequently obtained, then we are of opinion and hold that it would operate as a ratification of an act done without authority. In the instant case, the consent of the State Board of Education given in October, authorizing the board of trustees of the Lingleville school district to sell all or any part of the land, was sufficient to validate the contract of sale theretofore made between the board of trustees and Brown; it operated retroactively, and made the contract with Brown as effective as though it had been authorized previous to its making. It may be conceded that, at the time the material was furnished to Brown by appellants, Brown's title to the house was lacking in complete validity because of the failure to obtain the previous consent of the State Board of Education, but he at least had an inchoate right or title to the property, which was afterwards perfected, and he should be consid-

ered the owner of the building at the time the material was furnished, within the constitutional and statutory provisions relating to materialman's liens. Cameron & Co. v. Trueheart, 165 S. W. 58; Schultze v. Brewing Co., 2 Tex. Civ. App. 236, 21 S. W. 163. In Cameron & Co. v. Trueheart, supra, it was held that the purchaser of land under a verbal executory contract, which was subsequently carried out by the giving of a deed, was the owner at the time the material was furnished. The purchaser in that case had a title which was lacking in a particular essential to its complete validity, viz. a written conveyance. Here Brown had a title to the rock house, which was in writing, but which also was lacking in a particular essential to its validity, viz. the consent of the State Board of Education. In Cameron v. Trueheart the imperfect title was perfected by the execution of a written conveyance given subsequent to the furnishing of the material, and the grantee was held to have been the owner at the time the material was furnished, within the meaning of the statute. Here Brown's title was perfected by the resolution of the State Board passed subsequent to the furnishing of the material, and he, too, should be regarded as the owner of the building at the time the material was furnished, within the meaning of the statute, and it is so held.

[4] It will be noted that the resolution of the State Board of Education gives the board of trustees the authority to sell all or any part of the 10-acre tract of land. The house was a permanent fixture, and constituted a part of the land, and was therefore within the purview of the resolution.

[5] Article 2873, R. S., says the president of the school board "shall execute his deed to the purchaser for the same, reciting the resolution of the State Board of Education giving consent thereto, and the resolution of the board of trustees authorizing such sale." In this connection, the point is made that the agreement between the board of trustees and Brown recited no such resolutions. It is not believed it was the intention that such provision should nullify completely a deed executed without reciting the resolutions mentioned. It was intended, doubtless, that the deed upon its face should disclose the authority by which it was executed; but this provision is regarded as directory and not mandatory, and a failure to incorporate such resolutions in a conveyance does not nullify the same. Upon the facts stated, it is held that Brown became the owner of the house in question, and, since the appellants furnished to him material for its repair, they are entitled to a lien thereon. The judgment of the court below will be reversed, and the judgment here rendered which should have been entered by that court, viz.: Against Brown for the amount of the account, in the sum of $159.92, with interest from October 1, 1914; and against all defendants establishing and

foreclosing the materialman's lien in favor of appellants against the rock house situate upon the 2½ acres of land conveyed to the board of trustees of the Bosque Presbyterian Church, U. S. A., by the trustees of the Lingleville independent school district, which deed is dated November 2, 1914, and recorded in the deed records of Erath county, Tex., in volume 126, at p. 369, and said house is ordered sold in satisfaction of the judgment rendered.

Reversed and rendered.

WALTHALL, J., not sitting, absent on Committee of Judges assisting the Supreme Court.