

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS

JO~~~~~~~~RD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable T. D. Sansing
County Attorney
Hansford County
Spearman, Texas

Dear Sir:               Opinion No. O-6554
                        Re:  Whether Spearman Independent
                             School District is authorized
                             to sell lots belonging to the
                             district without the consent
                             of the State Board of Educa-
                             tion.

        Your request for opinion has been received and
carefully considered by this department.  We quote from
your request as follows:

        "The Spearman Independent School Dis-
        trict desires to sell two lots owned by it
        in the town of Spearman, Texas, and the
        question has arisen as to whether or not
        same can be sold without the consent of the
        of the State Board of Education.  I have
        checked into the matter considerably and
        am unable to determine to my satisfaction
        whether or not the district has such
        authority.  I would, therefore, appreciate
        an opinion from your office on the matter.

        "The Spearman Independent School Dis-
        trict was created by a special act of the
        3rd called session 36th Legislature.  The
        district is not operated by the City of
        Spearman.  It includes all of the city and
        extends several miles each way out into the
        country.

        "Prior to 1938 the district sold a
        wooden building to the local American Legion,
        all, it seems on credit.  No lien was taken
        by the district.  This building was moved to
        the lots which the district now desires to
        sell.  The Legion placed a lien on the

buildings and lots in favor of a Lumber Company. The loan was not paid and the lien was foreclosed. As the lumber company got the amount of its loan from the sale of the building, it gratutiously deed the lots to the Spearman Independent School District. This was done in 1938 and the lots have remained vacant and unused ever since. The district had no idea of ever using same for school purposes, as they are not suited to be used in such manner, but had in mind selling the lots as a means of partly salvaging the loss on the building sole to the Legion.

"The district can sell these lots now at a good price, and the question, or rather two questions arise:

"1. Must the Spearman Independent School District Secure the consent of the State Board of Education before it can sell said two lots?

"2. If such sale is made, must it be at public sale?"

Spearman Independent School District in Hansford County, Texas, was created by H.B. 70, Acts of the 36th Legislature of Texas, 1920, 3rd Called Session. Section 1 of the Act creates the district and sets out the boundaries thereof. Sections 2, 3, 4 and 21 of the Act provide as follows:

"2. The management and control of the public free schools within said district is hereby vested in a board of trustees, which board shall be composed of five persons, resident citizens and qualified voters within said district, and each member of the board, before entering upon the discharge of his duties, shall make and subscribe to the usual oath for the faithful and impartial discharge of the duties of his office, as provided by the general laws of the State of Texas, governing independent school districts.

"3. The board of trustees of the Spearman Independent School District shall be a

body politic and corporate in law, and as
such may contract and be contracted with,
sue and be sued, plead and be impleaded in
any court of this State of proper juris-
diction, and may receive any gift, grant,
donation or devise made for the use of
public schools of the district, as provided
by the laws of the State of Texas govern-
ing independent school districts.

"4. The board of trustees of said
district shall manage and control the public
free schools within said district to the
exclusion of every other authority, except-
ing in so far as the State Superintendent
of Education (Public Instruction) and the
State Board of Education may be vested with
the general supervisory authority to in-
struct said board, as provided by the laws
of the State governing independent school
districts.

"21. The provisions of this Act shall
be cumulative of all general laws now in
force, or to be hereinafter enacted, govern-
ing independent school district, their manner
of creating debts, levying and collecting
taxes, except when the same is in conflict
with the provisions of this Act."

Article 2773, Vernon's Annotated Texas Civil
Statutes, reads as follows:

"Any houses or lands held in trust
by any city or town for public free school
purposes may be sold for the purpose of
investing in more convenient and desirable
school property, with the consent of the
State Board, by the board of trustees of
such city or town, and, in such case, the
president of the school board shall execute
his deed to the purchaser for the same, re-
citing the resolution of the State Board
giving consent thereto and the resolution
of the board of trustees authorizing such
sale."

Article 2753, Vernon's Annotated Texas Civil
Statutes, found in Title 49, Chapter 13, Section 1, Common
School Districts, reads as follows:

"The trustees of any school district, upon the order of the county trustees prescribing the terms thereof, when deemed advisable, may make sale of any property belonging to said school district, and apply the proceeds to the purchase of necessary grounds, or to the building or repairing of schoolhouses, or place the proceeds to the credit of the available school fund of the district."

Article 2753, supra, relates to common school districts and does not apply to independent school districts. R. B. Spencer & Co. v. Brown, 198 S. W. 1179.

We quote from the court's opinion in the case of R. B. Spencer & Co. v. Brown, 198 S.W. 1179, as follows:

". . . But appellees further contend that Brown did not become the owner of the building under his contract with the school board, because no order had been made by the Commissioners' Court of the county prescribing the terms of the sale, as required by Article 2846, R. S. (1911) (Now Art. 2753), nor had the consent of the State Board of Education to such sale been obtained, as required by article 2873, R. S. (1911) (now Art. 2773).

"Article 2846 has no application, because the school district was an independent school district. Said article appears in the Revised Statutes in chapter 15, title 48. This chapter relates to common school districts. Originally this article was section 86 of chapter 124, Acts of the Twenty-Ninth Legislature, p. 263. It there appears under the subtitle 'School Houses and School Supplies' of the title 'Common School Districts.' It is thus manifest that this article relates to the sale of property belonging to common school districts.

"The sale of school property belonging to the Lingleville independent school district is, however, governed by the provisions of article 2873, R. S. (1911), which requires the consent of the State Board of Education. The State Board of Education did adopt a

resolution, which was quoted above. This resolution did not in any wise undertake to prescribe the details of the sale which might be made of the land by the school board, and was sufficiently comprehensive to authorize the school board to make the sale thereof in the form of applying the value thereof to the construction of a new building. That is what was done by the agreement between the school trustees and Brown. This resolution of the State Board of Education constituted sufficient authority to the board of trustees to pass title to the school building to Brown, but in this connection it will be noted that this resolution was adopted subsequent to the date of the contract between the school board and Brown. Since said consent of the state board did not exist at the time of the contract with Brown, appellees contend he did not obtain the title to the building, and was therefore not the owner thereof, so as to enable him to fix a lien thereon for materials furnished. We do not think that a deed to a house or land executed by the board of trustees of an independent school district without the previously obtained consent of the State Board of Education would be such an absolute nullity as would preclude the application of the principles of ratification. Undoubtedly, however, it would be lacking in an essential necessary to its complete validity, viz. The consent of the State Board to the sale, but if such consent be subsequently obtained, then we are of opinion and hold that it would operate as a ratification of an act done without authority. In the instant case, the consent of the State Board of Education given in October, authorizing the board of trustees of the Lingleville school district to sell all or any part of the land, was sufficient to validate the contract sale theretofore made between the board of trustees and Brown; it operated retroactively, and made the contract with Brown as effective as though it had been authorized previous to its making. It may be conceded that, at the time the material was furnished to Brown by appellants, Brown's title to the house was lacking in complete validity because of the failure to obtain the previous consent of the State Board of Education,

but he at least had an inchoate right or title to the property, which was afterwards perfected.
. . . .

"Article 2873, R. S., says the president of the school board 'shall execute his deed to the purchaser for the same, reciting the resolution of the State Board of Education giving consent thereto, and the resolution of the board of trustees authorizing such sale.' In this connection, the point is made that the agreement between the board of trustees and Brown recited no such resolutions. It is not believed it was the intention that such provision should nullify completely a deed executed without reciting the resolutions mentioned. It was intended, doubtless, that the deed upon its face should disclose the authority by which it was executed; but this provision is regarded as directory and not mandatory, and a failure to incorporate such resolutions in a conveyance does not nullify the same. . . ."

In view of the court's opinion in Spencer vs. Brown, supra, we are inclined to believe that the consent or ratification of the State Board of Education would be needed before the purchaser of said lots from the Spearman Independent School District would obtain good and merchantable title thereto.

We think the better and safer practice would be to secure the consent of the State Board of Education in advance by proper resolution and incorporate same in the deed.

It is our further opinion that a proper conveyance could be had at either private or public sale. Notice of public sale could be advertised for a reasonable time, such as, e.g., the length of time provided by statute for sales of land under execution.

Yours very truly

APPROVED MAY 16, 1945

ATTORNEY GENERAL OF TEXAS

/s/ Grover Sellers

/s/ Wm. J. Fanning

ATTORNEY GENERAL OF TEXAS

By      Wm. J. Fanning
              Assistant

WJF:bt:eac

APPROVED
OPINION
COMMITTEE

BY B.W.B.
CHAIRMAN