**PARKDALE STATE BANK et al.,**
**Appellants,**

v.

**J. E. McCORD, d/b/a McCord Wholesale,**
**Appellees.**

**No. 371.**

Court of Civil Appeals of Texas.

Corpus Christi.

April 25, 1968.

Rehearing Denied May 16, 1968.

Fischer, Wood, Burney & Nesbitt, James P. Ryan, Corpus Christi, for appellants.

McDonald, Spann & Smith, David L. Smith, Corpus Christi, for appellees.

## OPINION

SHARPE, Justice.

This case involves the question of priority of liens as between the holder of a mechanic's and materialman's lien on account of improvements placed on real estate, on the one hand, and the holder, and successors in title through foreclosure, of a prior recorded deed of trust which provided for a first lien on the land and improvements thereon or thereafter to be placed thereon, on the other. Appellee, the holder of the mechanic's and materialman's lien, prevailed in the lower court.

J. E. McCord, appellee, brought this suit against Driftwood Corporation, hereafter "Driftwood", American Coffee Company, Parkdale State Bank of Corpus Christi, hereafter "Parkdale", Pels Quality Homes, Inc., and P. B. Portman and wife. Appellee sought recovery of an indebtedness on account of material and labor furnished by him in connection with the partial construction of three residences on lots situated in Corpus Christi, then owned by Driftwood, and for foreclosure of his mechanic's and materialman's lien. Driftwood did not defend and has not appealed from the judgment against it for $7,605.40 and attorney's fees of $1,500.00. Neither is there an appeal from the take-nothing judgment rendered in favor of the Portmans, which concerned one of the three lots originally involved. Thus we are here concerned with only the remaining parties and two lots upon which residences were partially constructed.

The evidence reflects that on November 4, 1965 Driftwood executed separate deeds of trust, recorded the following day, to Parkdale on two lots to secure a recited indebtedness of $11,450.00 in each instance. These instruments were in connection with an interim financing arrangement under which Parkdale agreed to advance funds to Driftwood to pay for the lots and costs of constructing improvements thereon. Such funds, excepting approximately $30.00, were advanced to Driftwood in five installments between November 12th and December 16th, 1965. Little, if any, of such funds were used for construction in 1965. From about March 15, 1965 to the end of June, 1965, appellee McCord furnished materials and labor on both lots. At the time McCord began work, there had been constructed or installed on each lot a concrete foundation slab, driveway and sidewalk. McCord's business is basically the fabrication of component parts of build-

ings and the setting of them on the job site. The usual arrangement is for an owner or builder to submit plans and specifications to McCord who then bids on the job. Such components consist generally of wall sections, window units, outside door units, roof trusses, roofs, outside wall sheeting and related materials, which are fabricated at McCord's plant and trucked to the building site where they are installed or set on an existing foundation. Remaining construction is done by other contractors or workmen. This general pattern was followed in connection with the improvements furnished by McCord on the two lots in question. Before all of the materials called for in the contract with Driftwood had been furnished, Driftwood repudiated the agreement. McCord then filed appropriate lien affidavits. On May 26, 1966, Driftwood conveyed the said lots to American Coffee Company. Thereafter, on August 5, 1966, McCord brought this suit and filed Lis Pendens notice in connection therewith. Driftwood having defaulted on its notes to Parkdale, the latter caused trustee's sales to be held on September 6, 1966, at which time Parkdale bid in the properties and secured trustee's deeds conveying title to the lots together with all improvements thereon. On December 21, 1966, Parkdale conveyed the two lots to Pels Quality Homes, Inc.

In answer to four special issues the jury found that the structures above the concrete foundation on each of the two lots "can be removed without material injury to the land or the remaining improvements", and "can be removed without material injury to such structures." The judgment recites that the trial court made certain "findings of fact as a matter of law" which in substance were that McCord had a valid constitutional Mechanic's and Materialman's lien as well as a valid statutory Mechanic's and Materialman's lien on each of the two lots and all improvements, structures and materials thereon.

The trial court rendered judgment in substance as follows: That McCord recover of Driftwood $7,605.40, plus $1,500.00 as attorney's fees, interest and costs; that McCord take nothing as to P. B. Portman and wife; that as to the remaining defendants McCord take nothing except as they are affected by the foreclosure of his liens and the order of sale granted in connection therewith; that McCord have foreclosure of his mechanic's and materialman's lien on all building materials above the concrete foundation on the two lots; that if under the order of sale the properties should bring more than $3,697.19 as to Lot 32 and $3,352.59 as to Lot 34, both in Candlewood Addition, Unit 3, an addition to the City of Corpus Christi, Texas, that the excess should be paid to Pels Quality Homes, and if the proceeds of sale were insufficient for the stated amounts, the balance was to be made as under execution against Driftwood; that the officer executing the order of sale would place the purchaser in possession within 30 days after the sale and the purchaser should have a reasonable time to remove the property so purchased from the premises.

Appellants assert three points of error in substance as follows: 1) That under uncontradicted evidence and as a matter of law Parkdale's deed of trust liens were first and superior against the land and improvements to the liens of McCord; 2) that under uncontradicted evidence and as a matter of law the materials constructed and installed on the two lots cannot be removed without material injury to the land or improvements thereon; and 3) that assuming removability as an issue, the proper test is whether the whole improvement on which the lien is claimed by the mechanic or materialman, and not selected portions of same, can be removed without material injury to the land or the improvement. Appellee's two counterpoints assert that the trial court judgment is correct because: 1) As to removable improvements the mechanic's and materialman's liens of McCord are superior to the deed of trust liens of Parkdale State Bank; and 2) that under the law and the evidence McCord is

entitled to an order of sale of all building materials above the concrete foundations on the lots in question.

We agree with appellee and affirm the judgment.

Under their point one appellant argues that Parkdale had first and superior liens on the lots and the unfinished houses, including the improvements placed thereon by McCord. They particularly point to the provisions of the deeds of trust which give Parkdale first liens on the two lots "together with all improvements thereon or hereafter to be placed thereon". But appellants' argument under their first point does not take into account the rule of law which is applicable where removability of improvements is involved, and appellants reserve argument in such respect for their points two and three. We believe that appellee's first counterpoint, in reply to appellants' point one, is well taken for the reasons now to be stated.

■ As to the lots and concrete foundations thereon, the trial court and appellee recognize that the deed of trust liens held by Parkdale were and are superior. But as to the materials above the concrete foundations the trial court agreed with appellee that his duly perfected mechanic's and materialman's liens were superior. Our agreement with the trial court and appellee in the fact situation here presented is based upon the well settled rule that a mechanic's and materialman's lien is superior (as to the improvements made) to a deed of trust lien where the improvements have not become so permanently attached to the land and existing improvements that they may be removed therefrom without material injury to the land and existing improvements or to the improvements removed, even though the deed of trust was recorded prior to the furnishing of materials and labor by the materialman or mechanic. See Articles 5452, 5459, 5471, Vernon's Ann. Civ.St., Article 16, Sec. 37, Constitution of Texas, Vernon's Ann.St.; Summerville v. King, 98 Tex. 332, 83 S.W. 680 (1904);

Wallace Gin Co. v. Burton-Lingo Co., 104 S.W.2d 891 (Tex.Civ.App., Austin, 1937, n. w. h.); Freed v. Bozman, 304 S.W.2d 235 (Tex.Civ.App., Texarkana, 1957, wr. ref. n. r. e.); 40 Tex.Law Review 872, 876.

In Freed v. Bozman, supra, the Texarkana Court of Civil Appeals, speaking through Justice Fanning, discusses the above-cited cases, constitutional and statutory provisions, and other authorities. In that case, Bozman asserted rights as the holder of a mechanic's and materialman's lien against a motion picture screen, frame, ticket booth, neon sign and speaker poles situated on an eight acre tract of land. A deed of trust in favor of other persons had been recorded prior to the furnishing of the materials and labor by Bozman. As in the instant case, the holder of the mechanic's and materialman's lien tried the case on the theory that as to the land the deed of trust was superior, but as to removable improvements his lien was superior. There the jury found in substance that the improvements placed on the land by Bozman, as hereinabove mentioned, had not become so permanently attached to the land as to prevent their removal therefrom without material damage. In affirming the judgment the Court of Civil Appeals held among other things that the evidence supported the findings of the jury as to removability, and that the trial court correctly decreed an order of sale for the specific items enumerated in the judgment. Freed v. Bozman is closely in point to the instant case and we agree with the applicable rules therein stated.

In 40 Tex.Law Review 872, 876, (Comment "Priority of Mechanics' and Materialmen's Liens in Texas," Tully R. Florey, III) the following appears:

"In discussing the effect of article 5459 on the situation where there is an earlier lien on the land and a subsequent mechanics' lien on the building or improvements, the cases fall into two categories.

(1) Where the building or improvement is severable, a mechanics' lien may exist

on such building or improvement independently of any prior lien on the land;[26] and the mechanics' lien holder may have such building or improvement sold separately, provided this can be done without materially affecting the rights of other interested parties.[27] Where the improvements can be sold separately, they are not treated as part of the realty, but are treated as if made under a contract for removal.[28] This rule has been applied to improvements such as pumps fastened to beds of concrete but removable without injury to the land;[29] a cotton house located near to, but not connected with a cotton gin;[30] a ticket booth, speaker stands, and screen at a drive-in theater;[31] and even to a rock house which the mechanics' lien claimant had constructed.[32]

(2) Where the nature of the improvement is such that it is merged in and becomes a part of the building or structure improved, e. g., painting and plastering, roof repairs, or window frames, the subsequently accruing mechanics' liens will not be given priority over the existing lien on the property and building. If the nature of the repairs or improvements is such that they can be removed without damage to the building, the mechanics' liens may be asserted if the material can be so identified as to segregate it from materials supplied by others, as for example, plumbing fixtures, chandeliers, and air conditioning window units. The theory that applies to repairs to encumbered existing buildings also applies to the erection of new buildings or improvements where the severance and removal of such buildings or improvements would materially injure the realty."

The statutes and cases cited in the footnotes in connection with paragraph (1) are as follows: 26. Tex.Civ.Stat. art. 5459 (Vernon 1948); Summerville v. King, 98 Tex. 332, 83 S.W. 680 (1904); Wallace Gin Co. v. Burton-Lingo Co., 104 S.W.2d 891 (Tex.Civ.App.1937); William Cameron

& Co. v. Trueheart, 165 S.W. 58 (Tex.Civ. App.1914). 27. Tex.Civ.Stat. art. 5459 (Vernon 1948); Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901); Freed v. Bozman, 304 S.W.2d 235 (Tex.Civ.App.1957, error ref'd n. r. e.); J. D. McCollom Lumber Co. v. Whitfield, 59 S.W.2d 1106 (Tex.Civ.App.1933, error ref'd). 28. See Summerville v. King, 98 Tex. 332, 83 S.W. 680 (1904). 29. Mogul Producing & Ref. Co. v. Southern Engine & Pump Co., 244 S.W. 212 (Tex.Civ.App. 1922). 30. Wallace Gin Co. v. Burton-Lingo Co., 104 S.W.2d 891 (Tex.Civ.App. 1937). 31. Freed v. Bozman, 304 S.W.2d 235 (Tex.Civ.App.1957, error ref'd n. r. e.). 32. R. B. Spencer & Co. v. Brown, 198 S.W. 1179 (Tex.Civ.App.1917, error ref'd).

■ In support of their point one, appellants rely upon the cases of Regold Manufacturing Company v. Maccabees, 348 S.W. 2d 864 (Tex.Civ.App., Ft. Worth, 1961, wr. ref. n. r. e.); McConnell v. Mortgage Investment Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (1957); Crabb v. William Cameron & Co., 63 S.W.2d 367 (Tex.Com. App., 1933, judgment approved); and Cisco Banking Co. v. Keystone Pipe & Supply Co., 277 S.W. 1060 (Tex.Com.App., 1925, judgment approved). In the first two cases the question of removability of improvements was not involved. The last two cases recognize the rule of removability and its applicability in a proper case. Appellants' point one is overruled and appellee's first counterpoint is sustained.

■ By their point two appellants contend that the evidence conclusively established that the materials constructed on the lots in question cannot be removed without material injury to the land or improvements. Appellants have not asserted points of error contending that the evidence is either legally or factually insufficient to support the jury findings. Appellee concedes that appellants' evidence tended to show that the concrete slab, installed before McCord began work, could not be removed without damaging it and the land, and that

the materials furnished by McCord could not be removed without some damage to the wiring and air conditioning ducts. However, appellee's position was and is that the question of removal relates to the structures above the concrete foundations, and the testimony offered by several witnesses was to the effect that removal at such point could be made without material injury to the land or the improvements to remain or those to be removed. At least six witnesses testified on the question of removability under the circumstances. It is apparent to us that the testimony was at least conflicting and that the evidence is legally and factually sufficient to support the jury findings as to removability without material injury. The issues as to each lot were not conclusively established in their favor as contended by appellants, and their point two is overruled.

With reference to appellants' point three, we believe that the various arguments made thereunder are answered by the decision in Wallace Gin Co. v. Burton-Lingo Co., 104 S.W.2d 891 (Tex.Civ.App., Austin, 1937, n. w. h.). There the court held in part as follows:

"* * * The only question here presented is whether or not the court erred in ordering a foreclosure of the materialman's lien on the improvements involved. Appellants' contention in this regard is, first, that the evidence shows that the cotton house, in which the materials were used, cannot be detached and removed either as a unit, or by dismantling, from the premises without injury to the real estate and to the other improvements thereon as they stood prior to the time that the cotton house was built; and, second, that because the Burton-Lingo Company did not furnish all of the material that went into the erection of said cotton house, it was not entitled to the foreclosure granted.

Neither of these contentions is sustained. In connection with the first, the trial court found in his findings of fact as follows: 'I find, from the evidence that said building and improvements can be removed without detriment or material injury to said lot or real estate, and without detriment or material injury to the remaining improvements on said lot, and without detriment or material injury to such improvements themselves.'

It is not controverted that the cotton house in question was set apart from the gin proper, was erected upon a separate foundation, and covered by separate roof from the rest of the gin. At the time of its erection, or shortly thereafter, the roof covering the office used in connection with the gin, was extended so as to join the roof covering the cotton house. Evidence of witnesses, pro and con, as to whether the cotton house could be removed either as a unit or by dismantling, without injury to the remainder of the gin plant, and so as to leave the remainder of the gin plant in the same or as good condition as it was before the addition of the cotton house, was heard by the trial court. It would serve no good purpose to summarize or review the testimony here. Suffice it to say there was ample testimony to sustain the findings of the trial court above set out.

That being true, in the light of the now settled decisions, the materialman was entitled to foreclose his lien and to sell said property separate and apart from the real estate, and from the remainder of the gin property. Wm. Cameron & Co. v. Trueheart (Tex.Civ.App.) 165 S. W. 58; R. B. Spencer & Co. v. Brown (Tex.Civ.App. writ ref.) 198 S.W. 1179; J. D. McCollom Lbr. Co. v. Whitfield (Tex.Civ.App. writ ref.) 59 S.W.(2d) 1106; McAnelly v. Chambliss (Tex.Civ. App.) 63 S.W.(2d) 756; 29 Tex.Jur. § 95, p. 573; § 138, p. 628.

There being no question as to the appellee's debt, nor the validity of its lien, and it appearing that neither the real estate, nor the remainder of the gin property on the premises would be injured by the

foreclosure and removal; and it appearing that the security held by Davis on the property as it existed prior to the erection of these additional improvements would be in no way jeopardized or impaired, it is manifest that the appellants herein could suffer no injury from the foreclosure awarded by the trial court.

Nor was it necessary that the materialman furnish all of the materials which went into the construction of this cotton house before it could establish and foreclose its lien upon said property for the materials it did furnish. In this regard it is insisted that because the Wallace Gin Company bought and paid for materials elsewhere which were used in completed cotton house as a whole. pellee could not foreclose its lien on the contemplated cotton house as a whole. We do not understand the statute to so limit the rights of one who furnishes materials. If that were true, in many cases the lien and rights of the materialman could and would readily be defeated, for the reason that in many, if not in most, instances no one concern furnishes all such materials, and manifestly it is seldom true that all of the materials which go into the construction of such improvements are furnished on credit. It was the manifest purpose of the Constitution and the statutes to afford the materialman a lien, and to give him his remedies, for the materials furnished for such purpose, whether they be all or only a part of the materials used in the construction of the improvements. In any event, the appellants herein being purchasers at foreclosure sale under a prior deed of trust, did not furnish any of the other materials used in the construction of the cotton house, consequently they cannot be injured by the sale and removal of this structure, and their rights in the premises are in nowise injured or impaired. Even after the removal of the structure in question from the premises, they still have the property, in practically the same condition as it was when the deed of trust lien attached in 1930. That being true, they have suffered no injury."

After the briefs were filed in the instant case the Supreme Court of Texas handed down its decision in the case of University Savings & Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287. Although that case is not directly concerned with removability of improvements, it does decide important questions relating to priority of liens and reviews the pertinent statutes and leading cases on the subject. We believe our decision to be in accord with the discussion in the cited case to the extent that same is here applicable.

The judgment of the trial court is affirmed.