COURT OF CIVIL APPEALS
FIFTH SUPREME JUDICIAL DISTRICT OF TEXAS
AT DALLAS

NO. 20155        B 9671

MONOCRETE PTY. LTD., d/b/a          FROM A DISTRICT COURT
MONIER COMPANY,

            APPELLANT

VS.

FILED
IN SUPREME COURT
OF T—

AUG 5 1980

GARSON R. JACKSON CLERK
BY_____DEPUTY

EXCHANGE SAVINGS & LOAN
ASSOCIATION, RUSSELL
BUILDERS, INC., d/b/a
RUSSELL CUSTOM HOMES, POWELL,
ARDIS AND POWELL, INC., and
KENNETH L. STEWARD d/b/a
S & H ROOFING CO.,

            APPELLEES          OF DALLAS COUNTY, TEXAS

---

BEFORE CHIEF JUSTICE GUITTARD AND
JUSTICES ROBERTSON AND STOREY
OPINION BY JUSTICE STOREY
MAY 20, 1980

This appeal concerns the application of the "material injury" rule to a materialman's removal of a concrete tile roof. The trial court, in this non-jury case, found that "the concrete roof tiles cannot be removed without substantial damage to the tiles themselves, the remaining structure, existing improvements, and the land." It accordingly ordered that the deed of trust liens of defendant Exchange Savings & Loan were superior and that their foreclosures extinguished the materialman's liens of plaintiff Monocrete Pty. Ltd. Plaintiff attacks the trial court's finding on the ground that it is against the great weight and preponderance of the

-1-

evidence. We agree with this contention and therefore reverse and remand the judgment insofar as it favors defendant Exchange, but we affirm the judgment in favor of plaintiff against the remaining defendants, Russell Builders, Inc. and S & H Roofing Co.[1]

---

1.   Plaintiff sued Exchange Savings & Loan, which was the owner and holder of notes and prior recorded deeds of trust upon lots H-28, L-98, H-18, N-36 and H-10. Exchange was the purchaser at foreclosure of all five lots. Plaintiff sued Russell Builders, contractor-owner of lots H-28, L-98 and H-18, and recovered a money judgment against it. Plaintiff also sued S & H Roofing Co. as subcontractor and Powell as contractor-owner of lots N-36 and H-10 and recovered a money judgment against S & H Roofing Co. On appeal, plaintiff complains of error in the trial court's finding that it failed to perfect liens on lots N-36 and H-10. Plaintiff now concedes that its lien on N-36 was not perfected; and we conclude the trial court's finding that plaintiff failed to perfect a lien on H-10 is supported by evidence because it failed to prove delivery or timely notice. We are therefore concerned only with the Russell lots, H-28, L-98 and H-18, upon which all parties agree materialman's liens were perfected. The only parties to this appeal are plaintiff Monocrete and defendant Exchange Savings & Loan.

---

The parties agree that the case is governed by TEX. REV. CIV. STAT. ANN. art. 5459 (Vernon Supp. 1980), which creates a statutory lien in favor of the materialman upon any structure for which it furnished materials that were incorporated into the structure. They also agree that the case is controlled by

-2-

the long standing rule that the materialman's lien, if perfected, is superior to a prior recorded deed of trust lien on the land and structure when the improvements (materials) can be removed without material injury to the land and pre-existing improvements, or to the improvements (materials) themselves. First National Bank v. Whirlpool Corporation, 517 S.W.2d 262, 269 (Tex. 1974); Summerville v. King, 98 Tex. 332, 83 S.W. 680 (1904); Parkdale State Bank v. McCord, 428 S.W.2d 121 (Tex. Civ. App. - Corpus Christi 1968, writ ref'd n.r.e.); Freed v. Bozman, 304 S.W.2d 235 (Tex. Civ. App. - Texarkana 1957, writ ref'd n.r.e.). It also is agreed that defendant Exchange had a prior recorded deed of trust lien upon the three lots and improvements involved and that plaintiff had perfected its statutory materialman's lien upon each of them. The question is which has the superior lien. Plaintiff concedes that the prior recorded deed of trust lien is superior to its statutory lien unless it can be shown that its materials can be removed from the premises without material injury to the existing improvements or to the materials themselves. Neither party contends that the land will be injured by removal of the tile roof.

While the supreme court in _Whirlpool_ laid to rest many of the long standing problems with respect to superiority of liens which have troubled the courts and litigants for years, it did not answer the threshhold question, namely, what constitutes material injury. Defendant contends that we must

-3-

look to the nature of the improvements which are sought to be removed and it quotes from Whirlpool for authority. It seems to argue that removable improvements are limited to "accessories" or to an improvement which is "connectable" to the structure. We do not agree. While the supreme court in Whirlpool was concerned with disposals and dishwashers, it did not limit its holding to accessories, connectables or appliances. The court's discussion of the nature of the improvements was limited to its determination of whether the improvements were, in the first instance, incorporated into the structure so as to bring them within the purview of article 5459. 517 S.W.2d at 266. For the same reason, we do not agree with defendant that a roof may not be removed because it is a "basic" part of the structure.

No Texas authority, either before or after Whirlpool, has been found which attempts to define "material injury" nor do we believe the term is susceptible of precise definition. As the authorities illustrate, each case must be determined upon its particular facts. In the following cases, materials were held to be removable: First Continental Real Estate Investment Trust v. Continental Steel Co., 569 S.W.2d 42 (Tex. Civ. App. - Fort Worth 1978, no writ) (windows and doors could be removed by taking out brick around them without causing ultimate damage to residence); American Amicable Life Insurance Co. v. Jay's Air Conditioning & Heating, Inc., 535 S.W.2d 23 (Tex. Civ. App. - Waco 1976, writ ref'd n.r.e.) (air conditioning

-4-

units and heating units held removable from apartment complex without material injury thereto); Wallace Gin & Burton-Lingo Co., 104 S.W.2d 891 (Tex. Civ. App. - Austin 1937, no writ) (materials used in erection of cotton house connected by roof extension to a cotton gin could be removed without materially damaging adjoining gin). The following are examples of non-removable improvements: Cameron County Lumber Co. v. Al & Lloyd Parker, Inc., 122 Tex. 487, 62 S.W.2d 63 (1933) (lumber used to build house held not removable); Chamberlain v. Dollar Savings Bank of New York, 451 S.W.2d 518 (Tex. Civ. App. - Amarillo 1970, no writ) (brick could not be removed from house without detriment or material injury to improvements); Irving Lumber Co. v. Alltex Mortgage Company, Inc., 446 S.W.2d 64 (Tex. Civ. App. - Dallas 1969), affirmed, 468 S.W.2d 341 (Tex. 1971) ("shell houses" became merged with completed houses and could not be removed and sold separately without damaging realty). In the light of these authorities, we must examine the record before us to determine if the trial court's findings are so against the great weight and preponderance of the evidence as to render them manifestly unjust. Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814 (1959); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The materials sought to be removed are precast concrete roofing tiles which are 16 1/2" by 13" by 1/2" and weigh about ten pounds each. These are identified in the record as "field tile." The tiles are corrugated so that when one row is laid

-5-

to overlap another, an interlocking effect results. The roof system, of which the tiles are a part, is constructed as follows: A solid deck of 1/2" plywood is installed over the exposed rafters of the structure, in this case a townhouse; the decking is then covered with a layer of felt paper; strips of 1" by 4" wood lathing are then nailed end to end across the length of the roof about 12 inches apart; the tiles are then laid over the lathing in rows so that each tile overlaps the next and each row overlaps the preceding row. Around the perimeter of the roof is nailed a fascia board to cover the exposed rafter ends. Trim tiles, which slightly overhang the fascia board, are nailed around the perimeter of the roof. Additionally, the system employs rake tile and ridge tile which cover the ridge rows and are fixed in place by mortar. When tiles abut a wall or vent pipes which protrude through the roof line, lead flashing is installed to overlap the tile in order to prevent water leakage. The interlocking effect created by the overlapping of tiles and by the lath is not secure in itself; consequently, depending upon the pitch of the roof, some of the tiles must be nailed to the lath. For this purpose, one nail-size hole is left in each tile during the molding process. Here, the roof was not severely pitched; therefore, only every second tile in every second row was nailed.

As stated before, only the tile is sought to be removed from the three houses in question. The record shows that on

the average each house contains about thirty-seven to thirty-nine squares of tile which translates into 3,700 to 3,900 pieces of tile. Of these, about ninety percent are field tile and ten percent are a combination of rake, trim and ridge tile. The retail price of each piece of field tile is forty-five cents and the labor cost for the removal of all the tile would be about ten dollars per square.

During the installation process, the tile is lifted to the roof of the house by means of a thirty-two foot conveyor belt and spaced in stacks about the surface of the roof so as not to create undue weight stress on any part of the decking. The testimony is that removal would be accomplished in a reverse order from the installation. Five witnesses, each with varying degrees of experience and expertise with concrete tile roofs, gave testimony regarding installation and removal of the roofs.

Steward, the owner of S & H Roofing Co., who was a defendant in the trial court, was called as an adverse witness by plaintiff. He had been in the roofing business for many years; however, his experience with concrete tile was limited to four jobs. He testified: "Well, there would be some broken tile if you take them off and there would probably be a little damage to the house, but I don't think it would be much." The damage to the house, according to Steward, consisted of "possible" tearing of some felt, a bending of flashing, and

-7-

some nail holes. He could not testify that the nails penetrated the decking and into the attic. Kilgore was the head of plaintiff's contract division and charged with the training of its installers. He had participated in the removal of one entire roof and, on another occasion, had removed a part of a roof for the purpose of constructing an addition to a house. He testified that, "No damage occurred to the tile except for an occasional broken one, but primarily, it is all useful material. There should be no damage to the tile or to the house as long as reasonable care is taken." He explained that of those tiles which are randomly nailed, the nails are removed with flat-jawed pliers and are easily removed because they are necessarily not driven flush with the top of the tile, otherwise the tile might be shattered in installation. According to Kilgore, tiles could possibly be broken by walking upon them, however, because a roof is removed in a manner reverse from its installation, there is little occasion for walking on the tile.

Stell was plaintiff's installation adviser with twenty-five years experience in the roofing business and extensive personal experience in laying concrete tile. He had never removed an entire concrete tile roof but had removed clay tile, a softer material, with only occasional breakage. He had removed sections of plaintiff's tile and experienced no damage to the structure and only an occasional broken tile. On an average roof, only

three or four tile would be broken by walking on it. While flashing will need be bent to remove tile, no damage results because it is flexible and can be bent back when the tile is replaced.

Beddall supervised construction of the houses in question for Russell Builders and was Exchange's representative at trial. While he had supervised construction of about twelve houses using concrete tile, he had only one experience in removing and reinstalling tile. He had removed all the tile from a garage in the townhouse development, added a second story addition, and replaced the tile. In calculating the cost of the addition, he had estimated a loss of twenty percent of the field tile, ten percent of the rake tile and all of the ridge tile. He testified that his estimate "worked out real well" in the course of construction. With respect to damage to the existing structure, Beddall testified that there might possibly be damage to the fascia, the felt paper, and the stucco walls, but he acknowledged that whether the stucco walls were scratched at all would depend upon how carefully the tile was removed.

Summarizing all of the evidence in the record and, as we must, assuming a requisite skill and care in removal, we find the only injury which might occur to the existing structure would be nail holes left by those tiles which were randomly nailed; there would possibly be some cracking of paint on the lead flashing; and possibly some tearing of the felt paper. We

do not consider this evidence of material injury to the existing structure and therefore hold the trial court's finding to the contrary is against the great weight and preponderance of the evidence.

In further support of its contention that the roof may not be removed because it is a part of the basic structure, defendant argues that the remaining structure would be subject to damage from the elements after the removal of the roof. We do not understand this to be a limitation placed upon the test set forth in Whirlpool. The test is whether material injury would occur in the removal process. As observed above, we must assume the materialman, or other purchaser at sale, will use reasonable care and skill in removal, otherwise he may subject himself to damages for injury to the remaining improvements. Furthermore it is common knowledge that wood shingle roofs are removed on a daily basis without injury to the structure during or after removal, and we perceive no reason that tile could not be removed as well. Particularly is this true where, as here, the structure is covered with solid decking.

The question of material injury to the materials removed presents a different question. Although not expressed in the supreme court's opinion, we understand the rationale leading to this requirement of the Whirlpool rule is to prohibit what might be characterized as "spiteful" removal. For example,

-10-

a concrete subcontractor having poured walks, driveways and patios might elect to remove them all on the notion that, because he had lost his labor and materials, an owner or lien holder should not be allowed to profit from his loss. He could break up and remove all his materials without injuring the land, but would realize no benefit from his action. As further example, the witness Kilgore testified he could remove a wood shingle roof without injuring the existing structure but doubted it would be economically feasible because the shingles would be destroyed.

Material injury to the improvements themselves may therefore be translated into the economic benefit to the materialman. In determining the economic benefit which plaintiff may be expected to derive from removal of the tile, we should accept the testimony least favorable to its removal because the burden of proof is upon plaintiff. Although it generally could be assumed that less care in removal would be taken by one who had estimated a loss in his quote to an owner than would be taken by one whose purpose in removing was for resale, we nevertheless, for our purpose, will accept the testimony of Beddall, who estimated a breakage of twenty percent in field tile, ten percent in rake tile and one hundred percent in ridge tile. The total tile on each house amounts to about 3,700 pieces of which field tile is about ninety percent or 3,300 pieces. Assuming a twenty percent loss from breakage of field tile, 2,670 tiles would remain useable. At forty-five cents

per tile, less ten dollars per square or about $370 per roof for labor in removal, the plaintiff could expect to recover about $830 per house or $2,490 from the three houses in question. This amount represents a substantial degree of recovery to the plaintiff and, we conclude, demonstrates a lack of material injury to the improvements themselves. We reach this conclusion because we are bound to indulge the facts in favor of recovery by the materialman. Whirlpool, 517 S.W.2d at 269; Hayek v. Western Steel Co., 478 S.W.2d 786, 795 (Tex. 1972); University Savings & Loan Assn. v. Security Lumber Co., 423 S.W.2d 287, 296 (Tex. 1967). We hold therefore that the court's finding to the contrary is against the great weight and preponderance of the evidence.

We are not to be understood as departing from the Whirlpool test. We conclude only that one standard for determining whether material injury would occur to the improvements removed is the economic benefit to be realized by the materialman. Nor do we believe that, once the test of Whirlpool is met, the courts should necessarily be required to make a precise determination as to what may constitute a reasonable economic benefit. Rather, this may be determined by the economic imperatives in each particular case.

In this respect, we point out that in such cases, the courts seem to consistently assume that the materials will of necessity be removed and placed in inventory for resale. This is not necessarily the case. Title to the materials having

-12-

passed to the purchaser, the trial court must first order foreclosure of the materialman's lien and then order a sheriff's sale of the materials in place. Conceivably third parties may desire to bid for their purchase. Certainly the materialman and the lien holder or owner may desire to bid. The materialman, if he bids, must do so on the basis of value to him as inventory. He must consider his cost of resale as well as his cost of removal. Most importantly, he must consider that in removing he may risk more damage to existing improvements than he previously represented would occur. We perceive no reason that he should not be held to the same degree of care and the same extent of injury to existing improvements that he represented to the court would occur. Thus he must be prepared to respond in damages for any excess.

We therefore reverse the trial court's judgment insofar as it decreed the deed of trust liens superior to the materialman's liens upon lots H-28, L-98 and H-18; and remand for further proceedings consistent with this opinion. We are bound to remand the case rather than to render, because our holding sustains appellant's weight and preponderance points rather than its no evidence points. Leavell & Co. v. Vilbig Brothers, Inc., 160 Tex. 600, 335 S.W.2d 211, 213 (1960); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In all other respects, the judgment of the trial court is affirmed and costs of this appeal are taxed to the defendant Exchange.

CHARLES H. STOREY
ASSOCIATE JUSTICE

-13-

THE STATE OF TEXAS

I, Jeannette Johnson, Clerk of the Court
of Civil Appeals for the Fifth Supreme Judicial
District of Texas, do hereby certify that the fore-
going is a true and correct copy of the opinion of
this Court in Cause No _____ 20155 _____

___ Monocrete Pty. Ltd., d/b/a _____ , Appellant

vs ___ Exchange Savings & Loan Assoc. ___ , Appellee

as the same appears of record and on file in this
Court

Given under my hand and seal of said Court,
at office in Dallas, this the ___ 28th ___ day of
___ July _____ , A D 19 80

JEANNETTE JOHNSON, Clerk

By

NO.   20155


Monocrete Pty. Ltd., d/b/a
Monier Company

APPELLANT



VS.



Exchange Savings & Loan
Association, et al

APPELLEE



CERTIFIED COPY OF OPINION

OF COURT OF CIVIL APPEALS,

FIFTH DISTRICT, AT DALLAS.

20155

Monocrete Pty. Ltd., d/b/a B 9671 §    From a District Court
Monier Company               §                  
                                   §
      vs.                         §    Of Dallas County, Texas
                                     §
Exchange Savings & Loan         §    Tuesday, May 20, 1980
Association, Russell Builders,    §
Inc., d/b/a Russell Custom Homes, § 
Powell, Ardis and Powell, Inc.,   §
and Kenneth L. Steward d/b/a     §
S & H Roofing Co.             §

BEFORE CHIEF JUSTICE GUITTARD AND JUSTICES ROBERTSON AND STOREY
OPINION BY JUSTICE STOREY

This cause came on to be heard on the transcript of the record, and the same being inspected, because it is the opinion of the Court that there was error in the judgment, it is therefore considered, adjudged and ordered that the judgment of the court below insofar as it decreed the deed of trust liens superior to the materialman's liens upon lots H-28, L-98 and H-18; and remand for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered and adjudged that the appellee, Exchange Savings & Loan Association, pay all costs of this appeal for which execution may issue, and that this decision be certified below for observance.

24076
20155

Monocrete Pty. Ltd., d/b/a       §
Monier Company                     §
                                    §
      vs.                         §    Thursday, June 26, 1980
                                    §
Exchange Savings and Loan      §
Association                       §

This day came on to be heard appellee's motion for rehearing in the above cause, and the same being inspected, it is therefore considered, adjudged and ordered that the motion be and the same is hereby overruled.

FILED
IN SUPREME COURT
OF TE~

AUG 5 1980

GARSON R JACKSON, CLERK
BY_____DEPUTY

THE STATE OF TEXAS

I, Jeannette Johnson, Clerk of the Court
of Civil Appeals for the Fifth Supreme Judicial
District of Texas, do hereby certify that the fore-
going contains a true and correct copy of the
judgment and all orders rendered and entered by
this Court in Cause No.____20155_____

___Monocrete Pty. Ltd., d/b/a____, Appellant

vs.__Exchange Savings & Loan Assoc.__, Appellee,
as the same appear of record in the minutes of this
Court.

Given under my hand and seal of said Court,
at office in Dallas, this the ___28th___ day of
_____July_____, A.D. 19_80_.

JEANNETTE JOHNSON, CLERK



By _Melanie Keeton_ Deputy

# CLERK'S OFFICE-Court of Civil Appeals at Dallas

Monocrete Pty. Ltd., d/b/a

vs.

No. 20155

Exchange Savings & Loan Assoc.

CERTIFIED COPY

## BILL OF COSTS

in the

COURT OF CIVIL APPEALS, 5TH DISTRICT

| | | |
|---|---|---|
| Clerk's Fees, Court of Civil Appeals (Rule 388-A)  Paid by Winstead, McGuire | $ | 25 00 |
| Transcript Fee | | |
| Statement of Facts Fee | | |
| Total | $ | 25 00 |

I, Jeannette Johnson, Clerk of the Court of Civil Appeals, Fifth Supreme Judicial District, at Dallas, hereby certify that the above copy of Bill of Costs is true and correct.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at Dallas, this __28th__ day of ___July___ A. D., 19_80_.

JEANNETTE JOHNSON
_____
Clerk

By _____, Deputy

129 F-236B

Dallas, Texas, _____, 19____

Dear Sir____:

The within bill of costs is now due and judgment for same, with execution thereon, has been entered against _____ and same should be paid promptly.

Yours very truly,

_____
Clerk, Court of Civil Appeals, Fifth District.

No. _____

CERTIFIED COPY

# BILL OF COSTS

of

## COURT OF CIVIL APPEALS

Dallas, Texas

vs.

Amount, $ _____

Supreme Court No. ....  ...

Exchange Savings and Loan Assoc.
                    Petitioner ....

vs.

Monocrete Pty. Ltd. d/b/a Monier Company
                    Respondent

From.        Dallas ..           .County

## CERTIFIED COPY OF JUDGMENT
## AND ORDERS
### of the
# Court of Civil Appeals
## FIFTH DISTRICT
## AT DALLAS

....

Filed in Supreme Court of Texas, the.  ....  ..........

day of                    .A. D. 19

....   .............  ....
                              Clerk.

By          ....      ..      ....
                         Deputy.

NO. 20155

Monocrete Pty. Ltd., d/b/a                    FROM A DISTRICT COURT
Monier Company

        vs.

Exchange Savings & Loan
Association, et al                            OF DALLAS COUNTY, TEXAS

                    July 29, 1980

Garson R. Jackson, Clerk
Supreme Court of Texas
Supreme Court Building          ⑧ 9671
Austin, Texas  78711

Dear Sir:

        In connection with application for writ of error filed in my
office in the above cause on July 25, 1980, I am transmitting here-
with the application and entire record, consisting of the following:

1.   Transcript of Record, 1 vol.

2.   Statement of Facts, 2 vol.

3.   Supplemental Statement of Facts, 1 vol.

4.   Exhibits, 1 vol., 1 notebook, (board and tile not included)

5.   Motion for Extension of Time to File Appellant's Brief, 3 copies

6.   Brief for Appellant, 4 copies

7.   Brief for Appellee, 5 copies

8.   Supplemental Brief for Appellee, 4 copies

9.   Appellant's Reply to Supplemental Brief for Appellee, 5 copies

10.  Appellee's Motion for Rehearing, 3 copies

11.  Response to Appellee's Motion for Rehearing, 3 copies

12.  Application for Writ of Error, 12 copies

13.  Check in the amount of $10.00, the cost of filing fee in the
     Supreme Court

14.  Certified copy of Opinion of Court of Civil Appeals

15.  Certified copy of Judgment and Orders of Court of Civil Appeals

                            Very truly yours,

                            JEANNETTE JOHNSON, CLERK


                    BY: _Melanie Keeton_____, Deputy
                        Melanie Keeton